ALVAN ROGERS & others *vs.* DAVID SNOW.

Suffolk. March 11, 12. — June 25, 1875. AMES & ENDICOTT, JJ., absent.

A breach of condition in a lease which provides that, in case the lessee neglects to perform his covenants, the lessor may, while such neglect continues, enter upon the premises and expel the lessee, and that upon such entry the term shall cease, does not work a forfeiture of the lease, without entry.

A lease of an entire building in Boston, which was destroyed by the fire of 1872, is not terminated at the election of the lessor by the passage, after the fire and before the erection of a new building, of the St. of 1872, c. 371, requiring the new building to be constructed of different materials and in a more expensive manner.

A lease of an entire building, which provides that the lessee shall pay all taxes assessed upon the premises, and that, if the premises are destroyed or damaged by fire, the rent shall be suspended or abated until the premises are put in proper condition for use by the lessor, is not terminated by the destruction of the building by fire during the lessee's occupation ; and a new building voluntarily erected by the lessor upon the land becomes a part of the realty and enures to the benefit of the lessee during his term.

TORT by the firm of Rogers & Co. for forcibly entering their store and expelling the plaintiffs therefrom by leasing the store to certain tenants. The declaration also contained a count in contract, which alleged that on or about August 4, 1866, the defendant executed to the plaintiffs a lease of certain premises in Boston for a term of ten years from January 1, 1867 ; that

under the lease they occupied the premises paying the rent reserved in the lease; that on or about November 9, 1872, the store thereon was totally destroyed by fire; that the defendant rebuilt the store, which was ready for occupancy June 1, 1873, but prevented the plaintiffs from entering and occupying it, as they wished and attempted to do, for the unexpired portion of their term, and leased it to other tenants to whom he gave possession; and that the plaintiffs demanded possession of the store of the defendant · and the said tenants, which was refused, whereby the defendant's covenant for quiet enjoyment in the said lease was broken.

By the lease, a copy of which was annexed, the defendant let, for a specified rent, to the plaintiffs " a store now being erected by me on Federal Street and Sullivan Place, Boston." The lessees covenanted to pay rent on certain days mentioned " except only in case of fire or other casualty; " and also all taxes " in respect of the said premises." The lease also contained the following clauses:

" Provided always that in case the premises or any part thereof shall, during said term, be destroyed or damaged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation, then, and in such case, the rent hereinbefore reserved, or a just and proportionate part thereof, according to the nature and extent of the injury sustained, shall be suspended or abated, until the said premises shall have been put in proper condition for use and habitation by the said lessor.

" And provided also that these presents are upon condition, that if the said lessees or their representatives or assigns do or shall neglect or fail to perform and observe any or either of the covenants contained in this instrument, which on their part are to be performed, or if the said lessees shall be declared bankrupt or insolvent according to law, or if any assignment shall be made of their property for the benefit of creditors, then, and in either of the said cases the lessor, or those having his estate in the said premises, lawfully may, immediately or at any time thereafter, and whilst such neglect and default continues, and without further notice or demand, enter into and upon the said premises or any part thereof in the name of the whole, and repossess the same as of his former estate, and expel the said lessees and

those claiming under them, and remove their effects, (forcibly if necessary,) without being taken or deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and that upon entry as aforesaid the said term shall cease and be ended.

" And the said lessor covenants and agrees with the said lessees and their representatives, that they paying the rent aforesaid, and performing the covenants herein contained, on their part to be paid and performed, shall peaceably hold and enjoy the said rented premises, without hindrance or interruption by the said lessor or any person or persons whomsoever."

Trial in the Superior Court before *Aldrich*, J., who allowed a bill of exceptions in substance as follows:

The store leased, which covered all or nearly all the land described in the lease, was totally destroyed by the great fire of November 9, 1872, and without the fault of either party. At the time of the fire the rent had been paid according to the terms of the lease to October 1, 1872, that being the last rent day before the fire. The taxes for the year 1872 had been paid by the plaintiffs before the fire. The defendant introduced evidence tending to show that on and before January 1, 1873, and several times between that day and January 21, 1873, he demanded the rent he contended was due January 1, 1873, of the plaintiffs, who refused to pay the same unless the defendant would make a deduction from the rent claimed, of a fair proportion of the taxes which they had paid, from the time of the fire, for the tax year beginning May 1, 1872, and terminating May 1, 1873. The defendant's evidence also tended to show that there was no extension of the time of the payment of the rent, nor any waiver of the rights of the defendant resulting from the nonpayment thereof; and that when the defendant demanded the rent he told the plaintiffs that they forfeited all their rights under the lease, if they had any, by refusing to pay the rent when payable according to the terms of the lease, and denied that he was bound to refund or make any deduction on account of the payment of taxes by the plaintiffs.

The evidence of the defendant further tended to show that on January 21, 1873, the rent was settled by the parties, and that

the defendant made a discount of about $240, which was to be a full settlement of the rent and taxes, and that the plaintiffs then surrendered all rights, if they had any, under the lease. Upon all these points, except as to the deduction of the $240, the plaintiffs introduced evidence contradicting that of the defendant, and evidence tending to show they had never forfeited their rights under the lease, and that the lease had never been cancelled or surrendered.

Upon all these disputed points to which this conflicting testimony related, the judge instructed the jury that if they should find upon the evidence that the defendant did demand the rent due January 1, 1873, and that the plaintiffs refused and neglected to pay the rent, that would amount to a breach of the covenant for the payment of rent, and would authorize the defendant, as lessor, to reënter and take possession of the premises and terminate the lease and all rights of the plaintiffs thereunder; but that the mere refusal and neglect to pay the rent by the plaintiffs would not operate as a termination of the lease and the lessees' rights under it, unless the defendant elected to avail himself of his rights and did reënter and take possession, and thus terminate the lease for that reason; that if the evidence showed that when the defendant demanded the rent the plaintiffs refused to pay the whole rent demanded, on the ground that they had, or that they in good faith reasonably believed they had, a right to a rebate or deduction of a part of the amount demanded, and only refused to pay until that could be properly adjusted between the parties, and the matter thereupon became a subject of negotiation between the parties, and the defendant did not proceed to enforce a forfeiture, that would not be such a refusal and neglect to pay rent as would work a forfeiture of the lease or of their rights under it; that if there had been upon the evidence a surrender of the lease or a termination of it by the defendant, in the manner before stated, consequent upon the refusal of the plaintiffs to pay rent, the plaintiffs could not prevail, and it would be the duty of the jury to return a verdict for the defendant; that a surrender of the lease or the estate created by it could be shown by proof of a mutual agreement between the parties to that effect; that such agreement might be either in express words, by which the lessees manifested their intention to yield up their inter

est in the premises to the lessor, or by operation of law if the parties, without any express surrender, did some act which implied that they had both agreed to consider the surrender was made; that a surrender could not be effected by a mere parol agreement between the parties unless the agreement was executed and the lessees vacated the premises and the lessor took possession, but if the lessor did take possession in pursuance of such agreement, that would terminate the tenancy, and the plaintiffs could not maintain this action.

It was admitted by the defendant that he did on January 23, 1873, lease to other parties the store which he was then building on the same lot of land, and which he completed in the summer of 1873. It was also admitted that after the store was completed the plaintiffs demanded possession of it from the defendant, claiming the right to enter and occupy it under their lease, and that the defendant denied their right and refused to comply with their demand, and that the plaintiffs have never since occucupied the premises. It was also admitted that the defendant, immediately after the fire, and before January 1, 1873, commenced to rebuild the store, and did rebuild it under and in conformity with the St. of 1872, c. 371; and the defendant introduced evidence tending to show that in the new structure he used more costly materials, and built in a more substantial and expensive style and manner than in the old, in order to comply with that law. There was no evidence that the defendant ever conferred with the plaintiffs in regard to the style or manner in which he intended to rebuild, or that he ever informed them of his plans for rebuilding, or that he ever received any instruc tions or requests from them respecting the same.

The defendant asked the judge to rule that the plaintiffs forfeited the lease by refusing to pay the rent payable January 1, 1873, unless the jury found that the time of payment was waived. The judge declined so to rule and reminded the jury of the instructions already given.

The defendant also requested the judge to rule "that as the St. of 1872, c. 371, passed after the fire and before the store was rebuilt, required such stores in Boston to be built of different materials, and in a much more expensive manner than before, this terminated the lease if the defendant chose to terminate it

and that therefore the plaintiffs could not recover." The judge declined so to rule.

" The defendant contended that the destruction of the premises by fire terminated the lease, and asked the judge to rule that by the terms of the lease the defendant was not bound to rebuild, and if he did, he was not bound to rebuild for these plaintiffs, but might lease the new store to whom he pleased, and these plaintiffs had no right to the new store by virtue of their lease." The judge ruled that the defendant was not bound to rebuild and was not bound to rebuild for these plaintiffs, and refused to rule further as requested.

The jury found for the plaintiffs; and the defendant alleged exceptions to the refusal to give the instructions requested.

*G. A. Somerby & L. W. Howes,* for the defendant.

*G. O. Shattuck & D. C. Linscott,* for the plaintiffs.

MORTON, J. The only questions presented by this bill of exceptions are as to the refusal of the court to give the three instructions requested by the defendant.

1. The court properly declined to rule that the plaintiffs forfeited the lease by refusing to pay the rent payable January 1, 1873. The lease contains the usual condition, that if the lessees neglect to perform their covenants, the lessor may, while such neglect continues, enter upon the premises and expel the lessees, and that upon such entry the term shall cease. Under this the lease may be terminated upon the refusal to pay rent, at the election of the lessor ; but it is clear that unless he enters while the default continues, the lease remains in force. The instructions given at the trial upon this point were correct. *Guild* v. *Richards,* 16 Gray, 309. *Hubbard* v. *Hubbard,* 97 Mass. 188. *Chapman* v. *Harney,* 100 Mass. 353.

2. The court also properly refused to rule that the lease was terminated, at the election of the lessor, by the St. of 1872, *c.* 371. This statute is in the nature of a police regulation which does not purport to affect existing leases or contracts, and the Legislature could not pass a law annulling or impairing the obligation of such leases or contracts.

3. The defendant requested the court to rule, that the destruction of the premises by fire terminated the lease, and that the plaintiffs had no right to the new store by virtue of their

lease. The correctness of the ruling requested depends upon the question whether the lessees took by their lease an estate in the land covered by the building. The premises leased are described as "a store now being erected by me on Federal Street and Sullivan Place, Boston."

The general rule is well settled that the grant of a house, store, mill or other building carries with it the land under the building. *Blake* v. *Clark*, 6 Greenl. 436. *Forbush* v. *Lombard*, 13 Met. 109. *Oliver* v. *Dickinson*, 100 Mass. 114.

A case may be taken out of this general rule if the lease or other grant shows that it was the intention of the parties that the building only or a room in it should pass, and not the land ; but there is nothing in this lease to indicate that such was the intention of the parties to it. The lease is of the whole building. The plain intent of the clause requiring the lessees to pay all taxes assessed upon the premises is that they are to pay taxes upon the whole estate including the land. The provision that if the premises are destroyed by fire the rent shall be suspended until the premises are put in proper condition for use, by the lessor, implies that the lease is to continue though the building should be destroyed.

We are of opinion that by this lease the plaintiffs took an estate for years in the land, and therefore that it does not fall within the rule, recognized in *Stockwell* v. *Hunter*, 11 Met. 448, that where the premises leased are destroyed, the lessee's interest is thereby terminated.

As the plaintiffs had an estate in the land for a term of years, though the lessor was not bound to rebuild, yet any building which he might erect would become a part of the realty and enure to the benefit of the plaintiffs during their term. It follows that the court properly refused the instruction requested by the defendant.                    *Exceptions overruled.*