THE AMERICAN EMIGRANT CO. v. CLARK ET AL.

1. **Conveyance:** NOT DEFEATED BECAUSE EMBODIED IN A CONTRACT. It is not essential that a deed of conveyance should follow any prescribed form of words; and if the intention to convey is unmistakably expressed, it will not be defeated by the fact that the instrument also partakes of the nature of a contract.

2. ——: CERTAINTY IN DESIGNATING GRANTEE. Where a conveyance partakes also of the nature of a contract, and, taking the whole instrument together, there can be no uncertainty as to the person to whom the conveyance is made, it will not be defeated simply because the grantee is not formally named in the conveying part of the instrument.

3. ——: CERTAINTY AS TO THE LAND CONVEYED. Where a conveyance is embodied in a contract, and from the whole instrument it clearly appears what land was intended to be conveyed, the land will pass thereby, though not particularly described, and though reference to another deed may be necessary to ascertain the particular description thereof.

*Appeal from Kossuth District Court.*

THURSDAY, DECEMBER 6.

THIS is an action in equity to quiet title to certain forty acres of land. The defendants filed a general demurrer to the petition, which the court sustained. The plaintiff appeals.

*Harvey & Davis*, for appellant.

*Coolbaugh & Call*, *J. Harry Call* and *Whiting S. Clark*, for appellees.

DAY, CH. J.—The plaintiff's petition is as follows:

"1. The plaintiff, the American Emirgant Company, alleges that it is a corporation, created by and existing under the laws of the state of Connecticut.

"2. Plaintiff alleges that it is the owner in fee simple of the following described premises, situated in Kossuth county, Iowa, to-wit: The east half of the northwest quarter of section twenty-nine (29), in township ninety-seven (97) north, of range twenty-eight (28) west of 5th P. M.

"3. That the said land is swamp land, within the meaning of the act of Congress of September 28, 1850, and was by said act granted to the state of Iowa.

"4. That said land was by the act of General Assembly of the state of Iowa, passed January 13, 1853, granted to the county of Kossuth, and thereafter, on the 17th day of May, 1867, the same was patented as swamp by the state of Iowa to the county of Kossuth.

"5. That the said land, with others, had by the selecting agent of Kossuth county been selected and reported as swamp, and thereafter, on the 8th day of February, 1862, one Asa C. Call entered into a contract with Kossuth county with reference to the swamp lands of Kossuth county, by virtue whereof said Call was to receive one-fourth of all said swamp lands.

"6. And afterward, on the 28th day of July, 1862, in pursuance of said contract, the lands inuring to said Call thereunder were designated and set apart to him, and, among others, the land in controversy was designated as inuring to said Call, and thereafter, on the first day of September, 1862, the said county, by warranty deed, conveyed said land, with others, to said Asa C. Call, and said deed was thereafter, on

the 25th day of November, 1868, filed for record and recorded on page 267 of book 4 of the records of deeds of Kossuth county, Iowa.

"And, on the 24th day of March, 1866, the said Asa C. Call made, executed and delivered his deed of conveyance to the American Emigrant Company, plaintiff herein, in words and figures as follows, to-wit:

"'Agreement made and concluded this 24th day of March, A. D. 1866, by and between the American Emigrant Company, by its general agent, F. C. D. McKay, of the one part, and Asa C. Call, of the county of Kossuth, of the other part, as follows, to-wit:

"'The American Emigrant Company are the owners of three-fourths of the swamp and overflowed lands, and claim on the general government for the swamp and overflowed lands, and cash and scrip indemnity for the same, of the county of Kossuth, in the state of Iowa.'

"The said Call has a contract with the said county for the remaining fourth of all the swamp and overflowed lands, and cash and scrip indemnity for the same, of the county, and owes the county, as a part of the consideration therefor, about fourteen hundred dollars. The company have purchased all of said Call's interest, and agree to pay him therefor the following prices, on the terms and conditions herein specified: The company agree to pay him at the rate of thirty cents per acre for all lands and indemnity which the said company shall finally realize out of the one-fourth interest claimed by Call; one thousand dollars of which is herewith paid to said Call in a draft on the treasurer of the company, payable sixty days after sight, the receipt of which is hereby acknowledged; fourteen hundred dollars of which purchase money is to be by the company reserved out of and from the money to be paid the said Call, to enable the company, in whole or in part, to purchase the said land of Kossuth county, in case the said contract between Call and the company should be violated; and the balance, if any there be, after taking out the said

twenty-five hundred dollars of the purchase money, to be due and payable to the said Call as soon as it can be definitely, ascertained what amount of lands are acquired by the company out of Call's interest. In case there should be a delay in the final settlement with the Government, or any parties, it is agreed that the excess of the purchase money, over and above the said twenty-five hundred dollars, shall be paid the said Call at the end of each and every year from this date, from time to time, as the title to the lands is acquired by the company. If at any time the company deem it necessary, the said Call will, upon request, make and execute to said company any further or different conveyance of his interest in said lands, with or without lists, and will, if requested, release to the county or the company all claim to any interest in the same under this contract. This contract is to operate as a conveyance of all remaining interest of whatever character which the said Call now has, or may hereafter acquire, in any of the said lands or claims for indemnity, (which interest and claim has been duly examined and is understood by the company,) by virtue of his contract with the county before alluded to, but nothing in the foregoing instrument contained shall make said Call personally liable in case of a failure of title to any of said land.

"In testimony whereof we have hereunto affixed our hands this twenty-fourth day of March, 1866.

U. S. INT.
REV. STAMP
$1.50.
CANCELED.

Asa C. Call.

"State of Iowa, } ss:
County of Polk. }

"'On the 24th day of March, A. D. 1866, before me, Seward Smith, a notary public in and for said county, personally came Asa C. Call, personally to me known to be the identical person whose name is affixed to the above instrument as grantor and maker thereof, and acknowledged the execution thereof to be his voluntary act and deed for the purpose

therein expressed. Witness my hand and official seal the day and year above written.

[SEAL.]          "SEWARD SMITH, *Notary Public*"— which instrument was duly filed for record on the 21st day of December, 1868, and recorded in book 4, pages 283 and 284, of the deed records of Kossuth county, Iowa.

"That the land in controversy had not been sold or otherwise disposed of by said A. C. Call at the time of making said conveyance with the plaintiff, but remained to said Call, and passed to plaintiff under the operation of said conveyance.

"9. That the defendants, as plaintiff is credibly informed and believes, make some claim to said land adverse to the estate of the petitioner, and that said claim is based upon a quit claim deed from said Call to defendant, A. D. Clark, bearing date August 13, 1878, and recorded August 13, 1878, in book 11, page 44, of the deed records of Kossuth county.

"10. That the defendant, Mary J. Clark, claims under a quit claim from said A. D. Clark, of date January 23, 1879, which deed is recorded January 23, 1879, in book 11, page 554, of the deed records of Kossuth county, Iowa. Wherefore plaintiff prays that its estate in said lands be established as against the adverse claims of defendants, and that the defendants be barred and forever estopped from having or claiming any right or title to the premises adverse to the plaintiff, and that it have judgment for costs."

It is insisted by the appellee that the instrument set out in the foregoing petition, executed by Asa C. Call, is a mere contract for a conveyance, and not a conveyance in itself. That

1. CONVEY-ANCE: not defeated because embodied in a contract.

it does partake of the nature of a contract must be admitted. It is evident, however, that it was intended by the parties to it to operate as a conveyance. This is apparent from the following portion of the instrument: "This contract is to operate as a conveyance of all remaining interests of whatever character which the said Call now has or may hereafter acquire in any of the said lands or claims

for indemnity, by virtue of his contract with the company before alluded to." It is not essential that a deed of conveyance should follow any exact or prescribed form of words. If the intention to convey is unmistakably expressed, that intention will not be defeated by the fact that the instrument also partakes of the nature of a contract. The instrument in question is acknowledged as a conveyance, and was recorded as such. It would be preferring shadow to substance to refuse to give it effect, and to carry out the evident intention of the parties, merely on account of its failure to comply with the forms usually employed for such purposes. If the contract contains the other requisites of a conveyance, it ought not to be denied operation as such merely on account of its informality. It is claimed, however, that no grantee is named in the instrument, and that for that reason it cannot operate as a conveyance. The contract declares that it is an agreement

2. ——: cer-
tainty in de-
signating
grantee.

made and concluded between the American Emigrant Company of the one part, and Asa C. Call of the other part, that the company have purchased all of Call's interest, and agree to pay him therefor at the rate of thirty cents per acre, one thousand dollars of which is herewith paid to said Call in a draft on the treasurer of the company; and if at any time the company deem it necessary, the said Call will, upon request, make and execute to said company any further or different conveyance, and that this contract is to operate as a conveyance. If the question should be asked, to whom is the contract to operate as a conveyance? there could obviously be but one answer, viz: to the company with which the contract is made, which purchased Call's interest and paid him therefor, and to which Call agrees to execute a further or different conveyance if deemed necessary. Taking the whole instrument together, there can be no uncertainty as to the grantee.

The cases cited by appellee upon this branch of the case are *Drury v. Foster*, 2 Wall., 24; *Paul v. Moody*, 7 Me., 455; and *Garnett v. Garnett's Lessee*, 7 Monroe, (Ky.,) 546. The

case of *Drury v. Foster* has no application to the question. In *Paul v. Moody*, in addition to there being no grantee named in the deed, the *habendum* was to the grantor and his heirs, which constitutes quite a material defect. In *Garnett v. Garnett's Lessee*, there was a relinquishment of all right and title to land, but nothing appeared anywhere to indicate to whom the relinquishment was made. We do not deem these cases in conflict with the views above expressed.

It is further insisted, however, that the instrument does not convey the property in controversy. It is claimed by appellee that the petition alleges that the land in controversy was conveyed to Call on the first day of September, 1862, whereas this instrument was executed on the 24th day of March, 1866, and refers to the lands claimed by Call, not under a deed of conveyance, but simply under contract with the county. It is evident, however, that the instrument in question refers to all the swamp and overflowed lands of Kossuth county, except the three-fourths already claimed by the plaintiff. The petition alleges that in *pursuance of said contract* the county conveyed said lands to Call. It appears from the allegations of the petition, therefore, that the lands in controversy inured to Call by virtue of his contract with the county, and the instrument declares that it is to operate as a conveyance of all remaining interests which Call now has or may hereafter acquire by virtue of his contract with the county. The instrument does, in our opinion, under the allegations of the petition, embrace the lands in controversy, although before that time conveyed to Call. It is further insisted that the contract is so indefinite and uncertain in its description that it cannot operate as a conveyance. The contract embraces all the land inuring to Call under his contract with the county. If these lands were, as the petition alleges, and as the demurrer admits, conveyed to Call on the first day of September, 1862, a reference to this deed will render certain the description in the agreement of 24th March, 1866. The court erred in sustaining the demurrer.                    REVERSED.

3. ——: certainty as to land conveyed.