PELEG CROSS

*v.*

THE WEARE COMMISSION COMPANY *et al.*

*Filed at Ottawa October 29, 1894.*

1. CONVEYANCES—*no particular form necessary.*  It is not essential that an instrument of conveyance should follow any exact or prescribed form of words, provided the intention to convey is expressed.

2. SAME—*the intention will control.*  Courts will so construe a conveyance as to give effect to the intention of the parties, and if it cannot operate as indicated by the letter, it will be held to operate in some other form, to effect that intention.

3. FIXTURES—*how far they may be treated as personalty.*  Many things regarded as fixtures to the realty may, by agreement of the parties, be treated as personalty in such manner as to work an estoppel to deny that they are such, but the estoppel does not bind third parties.

4. SAME—*when agreement of parties will not change character of property*. If the subject of a chattel mortgage is affixed to realty so as to become part of it, or if the lease of the mortgagor does not authorize its removal from land owned by another, and such removal cannot be made without injury to the realty or to the fixture, the agreement of the parties will not preserve the character of the property as personalty.

5. MORTGAGE—*upon chattel mortgage form—may convey real estate*. An instrument which, to secure an indebtedness, purports to "grant, sell, convey and confirm" an elevator attached to realty, describing the same as "the steam elevator on the railroad elevator lot," will operate to convey such elevator *as real estate*, and will hold the property as against a subsequent execution, although the instrument is written upon a chattel mortgage form, and acknowledged as such, and the property is referred to in the instrument as "goods and chattels."

6. SAME—*such grant of elevator carries leasehold*. In such case the leasehold interest of the mortgagors in the land on which the elevator is built, being necessary to the full enjoyment of the elevator, passes with it, under the mortgage.

7. ESTOPPEL—*when partner is estopped to assert title—judgment creditor*. A partner who declares, at the time a mortgage is given by his co-partner upon the firm property, that such co-partner owns the title and that he has no interest in it, is estopped to question that such mortgage conveys the entire interest, and a judgment creditor having notice is bound by such estoppel.

8. SAME—*may operate to convey title to land*. Title to land may be conveyed by estoppel, and the Statute of Frauds cannot be interposed by a creditor to defeat the application of the doctrine.

*Cross* v. *Weare Commission Co.* 45 Ill. App. 255, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

The bill in this case was filed on September 10, 1890, by the appellant, Cross, against the Weare Commission Company, the Will County National Bank and Albert A. Druley, surviving partner of the firm of Druley Brothers, composed of William M. Druley, now deceased, and the said Albert A. Druley, alleging the recovery by Cross on September 2, 1890, of a judgment by confession for $7653.33 and costs against the Druleys, partners, the

suing out and levying of execution thereon upon the lease-hold interests and other property hereinafter named, and seeking, in aid of said execution, to set aside the mort-gages hereinafter named as clouds upon the title to the property levied upon, and praying for a sale of said property and for an application of the proceeds of said sale to the payment of said judgment. Answers were filed by the defendants. Intervening petitions were filed by certain other judgment creditors. Cross-bills were filed by the appellee, the Weare Commission Company, and by said Bank, for the foreclosure of said mortgages owned by them, and hereinafter set forth, against said Cross and the other judgment creditors, and Albert A. Druley, and the widow and administratrix and minor heirs of William M. Druly, who died on September 5, 1890. The firm of Druley Brothers was insolvent, and on September 16, 1890, a receiver was appointed of the Caton and Plainfield elevators described hereafter and in said mortgages. Issues were joined, a hearing was had upon testimony oral and documentary, and a final decree was entered by the Circuit Court in favor of said Company and Bank upon their cross-bills, granting the foreclosures therein prayed, finding the lien of the mortgages to be superior to that of the execution of appellant, and direct-ing a sale of the elevator property described in the mort-gages, and that the proceeds thereof be applied to the payment of the mortgages first, and of the execution of Cross and the other judgment creditors next. Cross took an appeal from this decree to the Appellate Court where the decree was affirmed, and the appeal to this Court is for the purpose of reviewing such judgment of affirmance.

The firm of Druley Brothers were engaged in the grain business at Plainfield and elsewhere in Will County, and had an office in Chicago, William M. Druley living in Chi-cago and attending to the selling of the grain there, and Albert A. Druley, living at Plainfield and attending to the buying and shipping of the grain there. On Septem-

ber 1, 1886, the Joliet, Aurora and Northern Railway Co. leased to Druley Brothers a strip of land 110 feet long and 45 feet wide, being a part of the railroad right of way, situated in Plainfield, Will County, for ten years from March 14, 1887, to March 14, 1897. This lease was never recorded. Before its execution Druley Brothers took possession of the premises and erected thereon a steam elevator, feed mill, office, cribs and other fixtures, together with the necessary machinery, fixtures and appliances for doing a general grain business, the whole being known as the Plainfield elevator. Said Railway Co. afterwards sold out to the Elgin, Joliet & Eastern Railway Co.; and Druley Brothers surrendered said lease and took a new one from the latter company dated January 1, 1890, for ten years.

On January 1, 1890, the Gardner, Coal City and Northern Railway Company made a lease to said firm of certain premises at Caton in Will County for ten years from said date, which lease was recorded in the recorder's office of Will County on September 10, 1890; and upon said premises said firm erected another elevator, known as the Caton elevator.

On June 21, 1888, the Weare Commission Company, the appellee herein, then engaged in the commission business in Chicago, made an arrangement to make advances of money to Druley Brothers to be secured by a mortgage upon the Plainfield elevator. On that day appellee loaned the firm $4000.00, and took their two notes of $2000.00 each payable in one year, and to secure the payment of the same, as well as of all advances that might thereafter be made by appellee to said firm, William M. Druley executed and delivered to appellee what was in form a chattel mortgage upon said elevator property, which was therein described as follows: "All and singular the following described goods and chattels, towit: The steam elevator known as Druley Brothers' elevator, all cribs, the office, scales and other fixtures and appurte-

nances and personal property used in connection with said elevator, all being situate at said Plainfield, Illinois, on a piece of land on the right of way of the Joliet & Aurora Railroad company described as follows: * * * being a railroad elevator lot 110 feet long and 45 feet wide, together with all and singular the appurtenances thereto belonging or in anywise appertaining." This mortgage was duly acknowledged before a justice of the peace in and for Cook County and entered by him on June 22, 1888, and recorded in the recorder's office of Will County on June 25, 1888, but was not recorded in the recorder's office of Cook County. At the maturity of said notes they were renewed and a new mortgage, dated June 21, 1889, was executed to appellee by William M. Druley, precisely the same in terms as the first mortgage, except that the renewal notes of the firm were to mature in five months, and the advances secured were those to be made within two years. This mortgage was signed by William M. Druley and his wife, and was acknowledged before a justice of the peace for Cook County and recorded in the recorder's office of Will County.

When the notes secured by this second mortgage matured on November 21, 1889, a third mortgage of precisely the same tenor was made by William M. Druley to appellee to secure two notes for $2000.00 each signed by Druley Brothers and W. M. Druley, being in renewal of the former notes for those amounts, and due respectively in 120 and 130 days after date, and also to secure a note for $200.00 signed by Druley Brothers and W. M. Druley, payable two years after date, and all advances made by said Company within two years to said W. M. Druley or the firm of Druley Brothers or to any member of said firm, said advances being represented by three notes, two of $2500.00 each signed by Druley Brothers, dated June 7 and 18, 1890, and due in 90 days after date, and one note for $1000.00 signed by Druley Brothers, dated August 1, 1890, and due four months after date, all to the

order of said Company.   The last mortgage of date, November 21, 1889, was acknowledged by William M. Druley, who resided in Cook County, before a justice of the peace in and for said county and properly entered by him on November 21, 1889, and on the same day was filed for record in the recorder's office of Will County "and recorded in book 228 on page 488," but does not appear to have been recorded in the recorder's office of Cook County.

On July 14, 1890, William M. Druley and Albert A. Druley, individually and as the firm of Druley Brothers executed to said Bank a mortgage of similar tenor upon the Caton elevator, describing the property in substantially the same terms as the Plainfield elevator was described, to secure a note executed by said firm to the Bank for $3735.34 due in four months after date, which mortgage was acknowledged by said William on July 17, 1890, before a Cook County justice of the peace, and by said Albert on July 18, 1890, before a Will County justice of the peace, and was recorded in the recorder's office of Will County on July 19, 1890, and of Cook County on July 23, 1890.

The note, upon which appellant's judgment was entered, was for $7000.00, dated at Joliet May 1, 1889, due in 6 months after date with 7 per cent interest to the order of Peleg Cross, signed by Druley Brothers; and the warrant of attorney to confess judgment was signed by William M. and Alfred A. Druley.   Cross, the appellant, was the father-in-law of both William M. and Alfred A. Druley, and lived part of the time with the one at Plainfield and part of the time with the other at Chicago.   In 1884 Cross bought what was called the Jesse elevator in Joliet, and he and Albert A. Druley were in partnership in the grain and elevator business about a year, when in 1885 Cross sold the Jesse elevator to his sons-in-law as Druley Brothers for $7000.00.   They, however, did not pay the $7000.00 to him nor give him any note until May 1, 1889.   He drew money from them as he needed it from

time to time from 1885 to September, 1890. While he was absent in California, the note for $7000.00 was executed to him by his sons-in-law under the direction of an attorney, who had been for years the legal adviser of both Cross and his sons-in-law. This note was kept by said attorney until judgment was entered upon it.

Druley Brothers in their business were in the habit of drawing drafts on appellee when shipments were made from Joliet, which drafts were paid. The Plainfield elevator was the partnership property of Druley Brothers, built with their funds, and was known to be their partnership property by appellant, who says that they promised to secure him on said elevator property.

The note secured by the mortgage to the Bank was reduced to judgment on September 10, 1890, and execution was issued on that day and levied on said elevator and leasehold.

Mr. GEORGE S. HOUSE, for the appellant:

The owner of the entire estate may sever fixtures from the freehold and sell them as personal property; but this right does not exist to the owner of less than an absolute and complete estate, except as to trade fixtures, and then only within the law governing trade fixtures. *Salter* v. *Sample,* 21 Ill. 430; *Dooley* v. *Crist,* 25 id. 551.

The extent and character of a grant are presented for consideration in *Stettauer* v. *Hamlin,* 97 Ill. 312, *McCluskey* v. *Cromwell,* 11 N. Y. 601, and *Newell* v. *People,* 3 Seld. 97.

The question in this and other cases of construction of written instruments is, not what was the intention of the parties, but what is the meaning of the words they have used. *Rickman* v. *Carstairs,* 5 B. & A. 129.

The current of authority at the present day is in favor of reading statutes according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. *Waller* v. *Harris,*

20 Wend. 561; *People* v. *Purdy*, 2 Hill, 35, and 4 id. 384; *Denn* v. *Reid*, 10 Pet. 524; *Spragins* v. *Houghton*, 2 Scam. 377; *Hills* v. *Chicago*, 50 Ill. 86; *Bearss* v. *Ford*, 108 id. 108; *Snyder* v. *Turner*, 130 id. 36; *Griswold* v. *Hicks*, 132 id. 494.

No doubt the parties could agree among themselves that they would treat the property as personalty, but their private agreement could not change the character of the property, so far as third parties were concerned. The engine and superstructure, when attached to the soil, became a part of the estate of the lessee, and, unless expressly reserved, would pass to his grantee with the estate. *Dobschuetz* v. *Holliday*, 82 Ill. 371; *Ombony* v. *Jones*, 19 N. Y. 234.

The doctrine of *estoppel in pais*, or equitable estoppel, is based upon a fraudulent purpose and a fraudulent result. There must be deception, and change of conduct in consequence thereof, in order to estop a party from showing the truth. *Davidson* v. *Young*, 38 Ill. 152; *Mills* v. *Graves*, id. 464.

Messrs. OSBORNE BROS. & BURGETT, and Messrs. HILL, HAVEN & HILL, for the appellees:

When property is granted, all that is necessary to the enjoyment of the grant is impliedly granted as an incident. *Allen* v. *Scott*, 21 Pick. 25; *Endsley* v. *State*, 76 Ind. 467; id. 32; 53 Me. 79; *Wooley* v. *Inhabitants*, 2 Cush. 305; *Webster* v. *Potter*, 105 Mass. 414; *Blake* v. *Clark*, 5 Greenl. 436; *Whitney* v. *Olney*, 3 Mason, 280; *Cheshire* v. *Shutesbury*, 7 Metc. 566; *Rogers* v. *Snow*, 118 Mass. 118; *Trinity Church* v. *Boston*, id. 164; *Johnson* v. *Rayner*, 6 Gray, 107; *Greenwood* v. *Murdock*, 9 id. 20; *Owen* v. *Field*, 102 Mass. 102; *Aqueduct Corp.* v. *Chandler*, 9 Allen, 159; *Scanlon* v. *Geddes*, 112 Mass. 15; *Bacon* v. *Bowdoin*, 2 Metc. 591; *Patterson* v. *Graham*, 40 Ill. App. 399; *Tinker* v. *Rockford*, 137 id. 123; *Oliver* v. *Dickinson*, 100 Mass. 114; *Hollanbeck* v. *McDonald*, 112 id. 247; *Rogers* v. *Snow*, 118 id. 118; *Patterson* v. *Graham*, 40 Ill. App. 399; *Davis* v. *Handy*, 37 N. H. 65; *Marston* v. *Stockney*, 58 id. 609; *Baker* v. *Bessey*, 73 Me. 472.

A mortgage of chattels real must, under our statute, be recorded in the county where the land lies. *Knapp* v. *Jones,* 38 Ill. App. 489 ; *Booth* v. *Kehoe,* 71 N. Y. 341.

A mortgage covering real as well as personal property is not required to be twice recorded, and a double fee need not be paid. Devlin on Deeds, sec. 630 ; *Anthony* v. *Butler,* 13 Pet. 423.

Fraudulent intent is not essential to an estoppel. *Hill* v. *Blackwelder,* 113 Ill. 283 ; *Robbins* v. *Moore,* 129 id. 30.

The Statute of Frauds will not apply to defeat the application of the doctrine of estoppel. Title to land may be conveyed by estoppel. Creditors cannot set up the Statute of Frauds to defeat an estoppel as against their debtor. *Singer* v. *Carpenter,* 125 Ill. 117; *Hill* v. *Blackwelder,* 113 id. 283 ; *Robbins* v. *Moore,* 129 id. 30 ; *Wade* v. *Bunn,* 84 id. 117; *Mills* v. *Graves,* 38 id. 455 ; *Cochran* v. *Harrow,* 22 id. 345; *Moran* v. *Palmer,* 13 Mich. 367.

A mortgage may be a valid security for future advances. *Collins* v. *Carlisle,* 13 Ill. 254; *Speer* v. *Skinner,* 35 id. 282 ; *McConnel* v. *Scott,* 67 id. 274; *Frye* v. *Bank,* 11 id. 367.

Presumption of notice to Cross of all the facts arises from the relationship of the parties and their being thrown into constant contact. Wade on Notice, (2d ed.) sec. 25 ; *Scott* v. *Moore,* 3 Scam. 306 ; *Burgett* v. *Paxton,* 99 Ill. 288 ; *Parker* v. *Merritt,* 105 id. 293.

Notice, as well as fraud, may be proved by circumstances. *Schroeder* v. *Walsh,* 120 Ill. 403 ; *Bryant* v. *Simoneau,* 51 id. 324; *Insurance Co.* v. *Weaver,* 22 Ill. App. 122 ; *Cowling* v. *Estes,* 15 id. 255.

What a party's answer does not explicitly deny it impliedly admits. *Garrett* v. *Siebert,* 98 U. S. 75 ; *Jordan* v. *Wallace,* 5 Fish, 185 ; *Ely* v. *Monson Co.* 4 id. 64; *Parker* v. *Brant,* 1 id. 58 ; *Goodyear* v. *Berry,* 2 Bond, 189 ; *Andrews* v. *Frye,* 104 Mass. 234; *Woolen Co.* v. *Jordan,* 7 Wall. 583 ; *Enders* v. *Swayne,* 8 Dana, 103 ; 1 Daniell's Ch. 837, and note.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is a controversy between the appellant as execution creditor, and the appellee, the Weare Commission Company, as mortgage creditor, as to whether the judgment of the one, or the mortgage of the other, is entitled to priority of lien. Appellee's mortgage was executed and recorded before appellant's judgment was rendered.

The steam elevator, together with the cribs, office and scales, was unquestionably real estate. The interest of the firm of Druley Brothers in the real estate described in the mortgages was a leasehold estate where the unexpired term exceeded five years. The elevator and feed mill rested on a solid stone foundation, laid in a trench sunk into the ground below the frost line. The structures and improvements were of a permanent character. The engine and boiler were set on foundations of stone and brick; the boiler was enclosed by brick; the machinery, shafting, etc., were fixed to the elevator by bolts, screws and nails. The engine, boiler, machinery, gearing, office, scales, etc., were necessary to the elevator business, and formed a part of the elevator plant. The structures were affixed to the land in such a way as to be a part of the realty, and constituted a part of the freehold. It is conceded by both appellant and appellee, that the interest of the firm in the elevator plant as a whole was a chattel real. It was, therefore, the proper subject matter of a real estate mortgage. (*First Nat. Bank of Joliet* v. *Adam*, 138 Ill. 483). It is shown by the proofs, that the mortgage executed by William M. Druley upon this property on November 21, 1889, was recorded in the recorder's office of Will County where the elevator was situated, as early as November 21, 1889. It is also shown by the evidence, that appellant had actual notice of that mortgage before his judgment was rendered. Appellant's attorney, who obtained for him both his note and the judgment thereon, personally examined the record of the mortgage of Novem-

ber, 1889, in the recorder's office of Will County, on August 12, 1890.

The ground, upon which appellant claims that the lien of the mortgages should be postponed to the lien of his judgment, is that the mortgages were in form and phraseology chattel mortgages; that Druley Brothers treated the property as personalty and mortgaged it as such; that the mortgagees accepted security upon the property as personal property; that the court must hold the instruments to be chattel mortgages, and not otherwise; that, as chattel mortgages, said instruments are of no effect for the reason, that the property mortgaged is real estate and not the subject-matter of chattel mortgage, and for the further reason, that the mortgage of the appellee, Weare Commission Company, was not recorded in Cook County where William M. Druley resided. (Chattel M'tge Act, sec. 4;· 2 Starr & Cur. Stat. 1633).

It is not denied, that more than $10,000.00 of *bonâ fide* indebtedness is due to the Weare Commission Company upon its mortgage for money loaned, and that a *bonâ fide* indebtedness of more than $4000.00 is due to said Bank upon its said mortgage.

There is no doubt, that appellees made a mistake in using blank forms of chattel mortgages when they accepted their securities. It may be true, that they made a mistake in not more definitely describing the mortgaged property as realty; but it is clear from the evidence, that they intended to secure themselves by mortgages which should cover the property, whether it was realty or personalty. Whether the instruments are valid as chattel mortgages or not, they must have priority over appellant's execution if they can be regarded as valid securities upon the property as realty, appellant having had both constructive and actual notice of them before the entry of his judgment.

The question then arises, whether the mortgages contain such words as can be regarded as including within

their meaning an interest in realty. It is not essential, that the instrument of ·conveyance should follow any exact or prescribed form of words, provided the intention to convey is expressed. To make a conveyance valid it is sufficient, in general, that there be parties able to contract and be contracted with, a proper subject-matter sufficiently described, a valid consideration, apt words of conveyance, and an instrument of conveyance duly sealed and delivered. In a mortgage, there should be a sufficient condition of defeasance, but this often rests in parol instead of being expressed in the deed itself.

The words of conveyance used in the mortgages in this case are: "grant, sell, convey and confirm." The use of the word, "convey," is equivalent to a grant at common law, and passes the title; it means a transfer of title from one person to another. The word, "grant," is a generic term applicable to the transfer of all classes of real property. (*Patterson* v. *Corneal's Heirs*, 3 A. K. Marsh. 618; *Lambert* v. *Smith*, 9 Ore. 185).

The mortgage describes the property as "the steam elevator, etc., * * * on the * * * railroad elevator lot," etc. The grant of the steam elevator carries with it, as a part of the grant, the land upon which the elevator is located, and all that is necessarily used in connection therewith. When property is granted, whatever is necessary to the enjoyment of the grant is impliedly conveyed as an incident thereto. (*Tinker* v. *City of Rockford*, 137 Ill. 123). The grant of a house, store, mill or other building carries with it the land under the building, and around it, which is necessary for its enjoyment. (*Rogers* v. *Snow*, 118 Mass. 118; *Trinity Church* v. *Boston*, id. 164; *Allen* v. *Scott*, 21 Pick. 25). It has been held, that a mortgage on a "grist and saw mill and gin, together with all the privileges and appurtenances belonging thereto," included two acres of land upon which the mill and gin were located, and which had always been used in connection therewith and were necessary to the enjoy-

ment thereof.    (*Kimbrell* v. *Rogers*, 90 Ala. 339; 7 So. Rep.
241; *Johnson* v. *Raynor*, 6 Gray, 107; *Baker* v. *Bessey*, 73 Me.
472; *Davis* v. *Handy*, 37 N. H. 65; *Jamaica, etc.* v. *Chandler*,
9 Allen, 159). The leasehold interest of Druley Brothers
was necessary to the full enjoyment of the elevator, and
the language of the mortgage was broad enough to in-
clude it. There is nothing in the mortgages or leases to
indicate that it was the intention of the parties to pro-
vide for a removal of the elevators from the leased
ground. The habendum clause of the mortgage is: "To
have and to hold the same unto the said Weare Commis-
sion Company, its successors, heirs, executors, adminis-
trators and assigns, to its and their sole use forever."

Courts will so construe a conveyance as to give effect
to the intention of the parties rather than defeat such
an intention by a strict technical construction of the form
of conveyance adopted. "A deed that is intended and
made to one purpose may enure to another; for if it will
not take effect in the way it is intended, it may take
effect another way." (*Russell* v. *Coffin*, 8 Pick. 143; *Pray*
v. *Pierce*, 7 Mass. 381; *American Emigrant Co.* v. *Clark*, 62
Iowa, 182). Courts are liberal in construing deeds so as
to give them effect. "If they cannot operate as that
species of conveyance indicated by the letter, they will
generally be held to operate in some other form, so as to
effectuate the object, which, from the whole instrument
and the circumstances and condition of the title, the par-
ties appear to have intended." (*Thayer* v. *McGee*, 20 Mich.
195; *Bryan* v. *Bradley*, 16 Conn. 474).

It is claimed by appellant, that appellees are estopped
from asserting that the property mortgaged is not per-
sonalty, because the mortgages were written upon printed
blanks intended for use as chattel mortgages, and the
property is referred to therein as "goods and chattels,"
and the instruments were acknowledged as chattel mort-
gages. It is true that many things ordinarily considered
fixtures to the realty may become to all intents and pur-

poses personal property by agreement of all parties interested in both the realty and fixtures. (Jones on Chat. M'tges,—4 ed.—sec. 124). It is also true, that the parties to such agreement may, under certain circumstances, be estopped from denying that the property, treated by them as personalty, is personalty. (*Ballou* v. *Jones*, 37 Ill. 95 ; *Davis* v. *Taylor*, 41 id. 405). But as a general rule, it must appear in such cases, that the person· making the improvement had the intention, at the time of so making it, that it should not become a part of the realty. In many of the cases where a chattel mortgage has been given upon property affixed to the realty and where the property described therein has been held to be personalty, the debt·secured by the mortgage has been for the purchase price of the machine or other article.attached, and the chattel mortgage has been executed before the article was affixed to the realty, or at about the time it was so affixed, or the agreement for security by chattel mortgage has been made before the affixing took place. In some of the cases, the lease of the lessee making the improvement authorizes a removal of the property affixed. In other cases, it appears that the article attached to the realty can be removed without injury to it or to the realty, (*Sword* v. *Low*, 122 Ill. 487; Jones on Chat. M'tges,—4 ed.— secs. 125, 132 ; *Ford* v. *Cobb*, 20 N. Y. 344; *Trull* v. *Fuller,* 28 Me. 545 ; Tyler's Law of Fixtures, pages 671, 673 ; Ewell on Fixtures, page 69 ; *Tifft* v. *Horton*, 53 N. Y. 377; *Warner* v. *Kenning*, 25 Minn. 173 ; *Henkle* v. *Dillon*, 15 Ore. 610 ; *Fortman* v. *Goepper*, 14 Ohio St. 558 ; *Sisson* v. *Hibbard*, 75 N. Y. 542). In such cases the agreement, that the personalty attached to the realty shall continue to be personalty, will prevail as between the parties to the agreement. (Ewell on Fixtures, page 68 ; *Dobschuetz* v. *Holliday*, 82 Ill. 371).

But where a chattel mortgage is executed upon machinery or buildings or articles after they have been so affixed to the realty as to become a part of it, and

where the lease or other instrument of title, under which
the mortgagor holds, does not authorize a removal of the
thing attached, and where such removal cannot be made
without injury to the realty or to the fixture itself, the
agreement of the parties will not have the effect of pre-
serving the character of personalty in the things so
affixed to the freehold.    (Ewell on Fixtures, pages 23, 24,
68, 69, 317, 318; Jones on Chat. M'tges, secs. 130, 131).
Where such conditions exist, the case does not come
within any exception to the rule, that parties cannot, by
their mere agreement, convert into personalty that which
the law declares to be real estate.    (*Docking* v. *Frazell*, 34
Kans. 29).    Here, the chattel mortgages were executed
long after the elevator had been constructed and the ma-
chinery had been placed in it, that is, after the improve-
ments had become a part of the realty; the leases to
Druley Brothers granted no authority for the removal of
the improvements erected by them; and a removal of the
elevator plant could not have been made without injury
to it and to the realty.    (*Sword* v. *Low*, 122 Ill. 487).    It is
unnecessary to inquire whether or not Druley Brothers,
or the survivor of them, or the representatives of either,
would be estopped from denying that the elevator plant
was personalty if this was a proceeding by appellees to
foreclose their mortgages as chattel mortgages; because
both they and appellees claim that the mortgaged prop-
erty is realty.    And not only is this so, but appellant,
claiming adversely to both of them, contends that the
property levied upon under his judgment is realty.    In
cases where parties may agree among themselves to
treat fixtures as personalty, their private agreement can
not change the character of the property so far as third
persons are concerned.    (*Dobschuetz* v. *Holliday*, *supra; Row-
and* v. *Anderson*, 33 Kans. 264; *Lacustrine Fer. Co.* v. *L. G.
and Fer. Co.* 82 N. Y. 476; *Jenny* v. *Jackson*, 6 Bradw. 33;
8 Am. & Eng. Enc. of Law, page 61, and cases in note.)
The language used by Mr. Justice COOLEY in *Lyle* v.

*Palmer*, 42 Mich. 314, is applicable here. In that case it was said: "The circuit judge finds that the machinery was personalty. This finding was no doubt based upon the fact that the parties so believed and considered it. This may generally be conclusive, but not always, and in this case it is clear the parties were mistaken. The machinery was especially adapted for use in connection with the real estate. It was put up for use and actually used with it, and was not severed from the realty in ownership. The fact that in the mortgage it was specially described was unimportant." For the reasons stated, we are inclined to hold, that the mortgages in this case were sufficient for the purpose of conveying the property described therein as realty, as against the levy made by appellant under his judgment.

The point is made, that the mortgage to the Weare Commission Company is executed by William M. Druley, and is not signed by Albert A. Druley; that it does not purport to be made by the partnership, and therefore only passed such individual interest in the realty as would remain to William M. Druley after the firm debts are paid. The evidence is clear, that the elevator plant was owned by the firm of Druley Brothers; it was built with firm money; the leases from the railroad companies are to the firm of Druley Brothers; the notes secured by the mortgages are the notes of the firm; and the advances of money, which the notes represent, were made to the firm. Albert A. Druley testifies that the property was partnership property. The agent of the Weare Commission Company swears that, when he took its mortgage, Albert A. Druley told him that he had no interest in the elevator, that it was owned by his brother, and that, therefore, it was unnecessary for him to sign the mortgage. Albert denies that he made such statement. The agent is confirmed by several circumstances, and, among others, by the fact that certain warehouse receipts, pledged as collaterals for advances and signed and

acknowledged by Albert A. Druley, speak of certain grain as being stored "in the elevator owned by W. M. Druley." The lower courts have found, that Albert A. Druley did make the representations here attributed to him, and we are not prepared to say that their finding is not sustained by the evidence. This being so, Albert A. Druley is estopped from denying that William M. Druley had a right to convey the entire interest of the firm, and from questioning the validity of the instrument. Where a person induces another to believe in the existence of a certain state of things and to act on that belief so as to alter his own previous position, he is concluded from averring against such other person a different state of things as existing at the same time. A party, who stands by and sees another acting to his injury, and declares that he himself has no claim, will not be permitted in equity to afterwards assert his title to the injury of the person whom he has thus misled. It is sufficient if there would be a fraudulent effect from the evidence attempted to be set up. A court of equity has power to establish a title to real estate by estoppel against the former owner, who, by his acts and representations, has induced another to purchase or take a mortgage from one holding a defective or partial title. (*Hill* v. *Blackwelder*, 113 Ill. 283 ; *Mills* v. *Graves,* 38 id. 455 ; *Wade* v. *Bunn,* 84 id. 117; *Robbins* v. *Moore,* 129 id. 30). In *Moran* v. *Palmer*, 13 Mich. 367, where a partner conveyed a partnership lot in his own name, and received another lot in exchange therefor, and sold the latter, and the firm received the proceeds of the sale, it was held that the court would presume knowledge on the part of all the partners of such exchange, and that the receipt by the partnership of the proceeds of the lot sold estopped the heirs of the partner not joined in such deed from afterwards setting up a claim to the lot first named. Here, Albert A. Druley, as a member of the firm of Druley Brothers received the benefit of all the advances secured by the mortgage made by his partner.

We think that the appellant is as much affected by the estoppel as Albert A. Druley, for he had notice of the equities of the appellees before his judgment was rendered. The finding of the courts below upon this subject is sustained by the evidence.

The statute of frauds cannot be interposed to defeat the application of the doctrine of estoppel. Title to land may be conveyed by estoppel. Creditors cannot set up the statute to defeat an estoppel against their debtor. (*Singer* v. *Carpenter*, 125 Ill. 117; *Hill* v. *Blackwelder*, *supra; Robbins* v. *Moore*, *supra; Wade* v. *Bunn*, *supra*).

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*