(No. 17888.—)
CHARLES H. SIMMONS, Trustee, *et al.* Defendants in Error, *vs.* THE ROSELAND SECURITY VAULT COMPANY *et al.*—(EWALD E. MULLER, Receiver, Plaintiff in Error.)

*Opinion filed October 25, 1928.*

WETTEN, PEGLER & DALE, (JAMES P. HAFFNER, and WILLIAM B. TALLMAN, of counsel,) for plaintiff in error.

LESLIE A. NEEDHAM, for defendants in error.

Mr. Commissioner Partlow reported this opinion:

Defendants in error, Charles H. Simmons, as trustee, the Chicago Title and Trust Company, as trustee, and D. L. M. Simmons, filed their bill in the superior court of Cook county against the Roseland Security Vault Company, the Kimbark State Bank and Ewald E. Muller, its receiver, to foreclose two trust deeds. The bill alleged that on March 8, 1916, the Roseland Security Vault Company (herein referred to as the vault company) executed a promissory note, payable to itself, for $7500, secured by a second trust deed to the Chicago Title and Trust Company; that on March 8, 1918, the vault company executed a series of notes aggregating $3800, secured by a third deed of trust to Charles H. Simmons; that D. L. M. Simmons is the owner of these notes and the holder of these trust deeds; that both trust deeds cover property which is now owned by the Kimbark State Bank, that the indebtedness has not been paid, and the prayer was for a foreclosure.

The vault company filed an answer admitting the execution of the notes and trust deeds, alleging that on September 1, 1918, it conveyed all of the property covered by the trust deeds subject to a first trust deed of $30,000, and that it had no further interest in the property. The bank and its receiver filed an answer, in which they denied that the $3800 third deed of trust was executed for a valuable consideration, and denied substantially all the allegations of the bill with reference to both deeds. In their second amended answer they denied that the property was subject to the lien of the two trust deeds and averred that on March 11, 1916, three days after the date of the $7500 trust deed, the vault company executed to Greenebaum Sons Bank and Trust Company a note for $30,000, and a trust deed securing the same, which was recorded on March 21, 1916, seven days before the $7500 trust deed was recorded; that the $30,000 trust deed was a valid lien on the property; that neither

the $7500 note nor the second trust deed is valid because
(1) both were executed by the vault company without con-
sideration; (2) both were executed for purposes *ultra vires*
the vault company and its officers and directors and in pay-
ment or renewal of a prior note secured by the trust deed
of the vault company, dated March 9, 1915, the proceeds
of which prior note were used to pay the debts of the State
Bank of Calumet, in which the directors of the vault com-
pany were interested; (3) both were executed in pursuance
of an illegal and fraudulent conspiracy against the rights
and interests of the vault company, its stockholders and
creditors; (4) when the bank acquired title to the prop-
erty, on September 27, 1918, sufficient funds were set apart
to pay the $7500 note, but these funds were fraudulently
appropriated for the individual use of certain conspirators,
among whom were the assignors of D. L. M. Simmons.
The answer further alleged that the $7500 trust deed was
delivered to the officers of the vault company individually
and they hypothecated it as security for their individual
note of $6300, and the money realized from the $6300
note, together with $1200 borrowed from J. L. Long, was
used to pay a prior $7500 trust deed; that Frank H. and
Charles W. Novak made all of the payments on the $6300
note and were the owners of the $7500 trust deed when it
was transferred to D. L. M. Simmons and are now the bene-
ficial owners thereof; that said trust deed was transferred
to Simmons three years after it was due, in order that he
might foreclose it; that the vault company on September
27, 1918, sold the real estate covered by the trust deeds to
Joseph C. Willis for $33,500, subject to a first deed of trust
of $30,000, dated March 11, 1916, to the Greenebaum bank;
that on September 27, 1918, Willis conveyed the premises to
the Kimbark State Bank for $33,500, subject only to this
$30,000 deed of trust; that Willis paid Novak upon the
delivery of said deeds either $11,500 or $22,500; that the
funds received by the vault company from Willis consti-

tuted the only assets of the vault company, which was insolvent, and that the Novaks, as directors and officers, appropriated the funds received from Willis to their own use in payment of fictitious and pretended claims against the vault company, for the purpose of defrauding the bank, which was a creditor of the vault company by reason of its implied warranty against encumbrances in the deed of the vault company to Willis.

The defendants in error filed an amendment to their bill, in which they alleged that each of the trust deeds was executed and filed for record; that long after the execution and recording of said instruments the vault company, through its officers, agreed to sell the premises to Willis for $63,500; that at that time there was a valid first lien on the real estate for $30,000 to the Greenebaum bank; that under the terms of the agreement with Willis he was to take the real estate subject to this lien of $30,000 and was to pay the balance of the purchase price of $33,500 in cash, and out of the proceeds the vault company was to pay the two trust deeds sought to be foreclosed; that the deed to Willis was executed by the vault company but Willis was unable to pay all of the purchase money, and it was agreed that Willis should retain out of the $33,500, money sufficient to pay the indebtedness secured by the two trust deeds sought to be foreclosed; that thereafter Willis conveyed the premises to the bank, of which Muller is receiver, and that Willis, and all persons claiming by, through and under him, are estopped and barred from asserting any of said defenses in bar of the foreclosure.

Upon issue being joined the cause was referred to a master, who found that Willis executed a deed to the Kimbark State Bank on September 27, 1918, in consideration of $33,500, and subject to a trust deed to the Greenebaum bank for $30,000, of which $29,000 remained unpaid; that Willis was elected a director of the bank on November 23, 1918, and on February 5, 1919, he was elected president and

·continued to act as such until January 15, 1920; that no record was made on the books of the bank regarding the two trust deeds sought to be foreclosed, but said trust deeds were of record in Cook county and unreleased at the time of the conveyance to the bank; that Willis retained out of the purchase price $11,300 and agreed to pay the trust deeds but failed to do so; that there is no testimony showing that Willis and the Novaks conspired to use any of the money for their own purposes, neither does it appear that the money realized from the trust deeds was used for purposes other than the satisfaction of debts of the vault company; that Willis was practically the organizer of the bank and became its president, had full knowledge of all the encumbrances against the real estate and agreed to pay the same, and neither he nor the bank, nor its receivers, can question the validity of said trust deeds. The report found that both trust deeds were existing liens and recommended that a decree of foreclosure be entered. Exceptions were overruled and a decree of foreclosure was entered. From that decree Muller, as receiver, prosecuted an appeal to the Appellate Court for the First District, where the decree was affirmed, and the cause is before this court upon a writ of *certiorari* prosecuted by Muller, as receiver.

As ground for reversal it is urged by plaintiff in error that the bill did not allege either actual or constructive notice to the bank of facts which constituted an estoppel; the recording of the trust deeds was not constructive notice to subsequent purchasers that Willis retained funds to pay the trust deeds or notice of latent defects or equities in the record title; the privies of a grantor are not estopped as against subsequent purchasers for value without notice; notice to Willis was not notice to the bank, because Willis was not an agent of the bank; even if Willis was an agent or organizer of the bank, notice to him was not notice to the bank because his interests were adverse to the bank; notes and trust deeds executed for purposes other than

corporate purposes are *ultra vires;* the trust deeds were not negotiable instruments and the purchaser took them subject to all equities and defenses against the original holders; where the lender of money knows that the officers of the corporation are going to use the fund for purposes other than corporate purposes the lender becomes a party to the collusion and is barred from recovery; a trust deed authorized by directors having an interest personal and adverse to the corporation is voidable by the corporation or non-consenting stockholders or grantees of the corporation; even if the receiver in this case is estopped the trust deeds are not enforcible, because the receiver can recoup on his warranty against Willis and his assignor, the vault company.

The evidence shows substantially the following facts: The vault company was incorporated May 19, 1913, with a capital of $65,000, consisting of 650 shares, to do a safety deposit business. The incorporators were Frank H., Charles W. and Tillie H. Novak. They were the sole officers and directors of the corporation until May 2, 1916, when Frank A. Novak succeeded Charles W. as a director, and he and the other two were the sole officers and direct- ors until the dissolution of the corporation. Frank H. and Charles W. were brothers and lawyers and were cousins of Frank A. Novak. Tillie H. was the wife of Charles W. On May 28, 1913, the vault company acquired a two-story brick building at 108th street and Michigan avenue, in Chicago, consisting of three store rooms, three flats and three offices, subject to a mortgage of $20,000. Frank H., Charles W. and Tillie H. Novak in 1913 organized the State Bank of Calumet, and Charles W. was its president and Frank H. was its secretary. It had a capital of $200,- 000, and they owned a substantial portion of the stock. The bank occupied the corner room on the first floor of the building owned by the vault company. On December 31, 1913, two certificates of the vault company's stock for 300 shares each were issued to the Calumet Bank and re-

mained in its name until April 25, 1915. On June 20, 1914, the Calumet Bank suspended business. On October 6, 1914, it and the Pullman Trust and Savings Bank entered into an agreement by which the latter agreed to pay in full all of the creditors of the former, with the exception of four with whom the Pullman Bank had made a special agreement dated October 6, 1914. The Calumet Bank transferred to the Pullman Bank all of its property, together with 50 shares of stock of the vault company standing in the names of Frank H., Charles W. and Tillie H. Novak, and the two certificates for 300 shares each. The 650 shares of stock of the vault company remained in the possession of the Pullman Bank until April 28, 1915. Frank H. Novak entered into an agreement with three of the four largest creditors of the Calumet Bank, whose claims aggregated about $30,000, by the terms of which Novak agreed to pay the balance due on these three claims and the three creditors agreed to transfer to Novak all of their interest in the contract executed between them and the Pullman Bank on October 6, 1914. It is claimed by plaintiff in error that for the express purpose of raising funds to pay creditors of the Calumet Bank the directors of the vault company passed a resolution on March 8, 1915, authorizing the officers of the vault company to execute two trust deeds conveying the real estate of the vault company as security for one note of $15,000 and one of $7500. At that time there was a mortgage on this property of $20,000. On March 8, 1915, the officers of the vault company executed in its name a promissory note for $15,000, secured by a trust deed to the Foreman Bros. Banking Company as trustee, and delivered said note and trust deed to one Bernstein. On March 9, 1915, the officers of the vault company executed in its name its promissory note for $7500 and its deed of trust to the Chicago Title and Trust Company as trustee, and delivered said note and mortgage to one Bergman. The three creditors of the Calumet Bank assigned their claims

to Frank H. Novak on April 21, 1915. On April 25, 1915, he released the claim of each of the three creditors against the Calumet Bank and the Pullman Bank and received from the latter 650 shares of the vault company's stock, together with certain notes and mortgages aggregating $4429.79. When the three trust deeds, for $20,000, $15,000 and $7500, respectively, on the vault company's building became due, in March, 1916, the officers of that company renewed them, as follows: On March 11, 1916, they executed a first trust deed to the Greenebaum bank for $30,000. On March 8, 1916, for the purpose of renewing the Bergman trust deed of March 9, 1915, they executed a note in the name of the vault company for $7500, secured by a second deed of trust to the Chicago Title and Trust Company, which note and trust deed are the note and trust deed in controversy in this case which D. L. M. Simmons seeks to foreclose. Bergman, the holder of the $7500 note and trust deed executed March 9, 1915, refused to renew his loan, and on March 30, 1916, the officers of the vault company executed a note for $6300 to the Greenebaum bank, and as collateral security for this $6300 note they assigned and delivered to the Greenebaum bank the $7500 note and the second deed of trust executed on March 8, 1916. The Greenebaum bank paid to Frank H. and Charles W. Novak $6300 on this note, which was paid by Frank H. and Charles W. Novak to Bergman, the holder of the $7500 note and trust deed of March 9, 1915, the balance of the amount being furnished by J. L. Long. The $6300 note to the Greenebaum bank was finally paid, the collateral note and trust deed securing it were delivered to Novak, and in December, 1922, they were assigned to Simmons, who seeks to foreclose them. In order to pay the balance due on the three trust deeds executed in 1915, the officers of the vault company on March 9, 1918, borrowed of Simmons $5000. This debt was renewed on March 8, 1918, for $3800 and secured by a third trust deed to Charles H. Simmons as trustee,

which note and trust deed were later assigned to D. L. M. Simmons, who seeks to foreclose them. Simmons testified that Novak told him this money was borrowed to help on the vault company building.

The Kimbark State Bank, of which plaintiff in error, Ewald E. Muller, is now the receiver, was organized in the summer of 1918 with a capital of $25,000, divided into 250 shares of $100 each. In August and September, 1918, Frank H. Novak owned 200 shares of this stock, Frank A. Novak owned 10 shares, and J. L. Long, who was a brother-in-law of Novak, owned 10 shares. Frank H. Novak was a director of the bank and its attorney. On September 2, 1918, the stockholders of the bank passed a resolution that the place of business of the bank be changed to the building then owned by the vault company, and the change was made. On September 26, 1918, the stockholders of the vault company passed a resolution to sell the real estate of the vault company to Joseph C. Willis for $33,500, subject to the first lien of $30,000 held by the Greenebaum bank. On September 27, 1918, the directors of the Kimbark State Bank passed a resolution to buy from Willis the real estate owned by the vault company for $55,000, and the bank fixtures, furniture and vault for $27,500. The negotiations for this purchase were carried on largely between Frank H. Novak and Willis. On September 27, 1918, the vault company executed a warranty deed conveying the real estate to Willis for $33,500, subject to the first deed of trust of March 11, 1916, to the Greenebaum bank for $30,000. On the same day Willis conveyed the real estate to the Kimbark State Bank subject to the trust deed to the Greenebaum bank, and Frank H. Novak transferred his 200 shares of stock in the Kimbark State Bank to Willis. It was first agreed that Novak was to pay the two notes of $7500 and $3800, secured by the second and third trust deeds, out of the money received by him from Willis. When the time came to close the deal Willis did not have

money enough to pay the entire amount, and it was agreed that he was to retain $11,300 and assume and pay these two claims, but he did not pay either of them. The real estate and the money from the sale thereof constituted the only property owned by the vault company, and on September 26, 1918, its stockholders passed a resolution that the debts of the company be paid, the corporation wound up and its charter surrendered. Novak testified that Willis paid the vault company $11,000 or $12,000 in cash when the deed from the vault company to Willis was executed, and gave a due bill for $10,000 and later a trust deed on the Martin building, which was worthless; that out of the money received in cash from Willis, Novak paid $7000 or $8000 to John Novak for money advanced by him to the vault company, $1700 or $1800 to one Blitz on a note for furniture, and $1400 was retained by Charles W. and Frank H. Novak for money due them. He also testified that the vault company was indebted to the Calumet Bank in a considerable amount, and the stock of the vault company was put up as collateral for the debt and was later transferred to the bank. D. L. M. Simmons testified that after the second and third trust deeds were past due Novak told him he was going to foreclose the second trust deed, which was supposed to belong to Long and the Novaks. Simmons owned the third trust deed, and in December, 1922, he bought the second trust deed and gave Long a check for $1000, canceled certain claims he had against Novak, amounting to $3323.68, and agreed to pay Novak the difference between $7500 and $4323.68 when the amount due on the second trust deed was collected. On October 1, 1918, Charles W. Coleman was elected as a director and cashier of the Kimbark State Bank. On November 23, 1918, Willis was elected as a director, and on February 5, 1919, he was elected president, which position he held until January 15, 1920, when he resigned as president and director. On September 2, 1918, and again

on March 18, 1919, a resolution was adopted by the stockholders of the Kimbark State Bank to increase the capital stock to $100,000. On June 24, 1919, an affidavit was made by Willis and Coleman that the increased subscriptions had been paid in cash and that Willis owned 727 shares out of a total of 1000 shares. The increase was not approved by the State Auditor and the capital remained at 250 shares.

It will not be necessary to consider in detail the many questions of law and fact urged by plaintiff in error as grounds for reversal, for the reason that they are not applicable to the facts in evidence. The Kimbark State Bank and its receiver claim that the bank bought the real estate without notice of the agreement between Willis and Frank H. Novak with reference to the payment of the two trust deeds, and therefore neither the bank nor its receiver is estopped to question the validity of those two trust deeds. Novak was a director and one of the largest stockholders of the vault company during its entire existence and was present at every meeting of the stockholders and directors, as shown by the minutes offered in evidence. He voted for the resolution to sell the real estate to Willis and was secretary of the corporation at that time. He was also a director, secretary and a large stockholder in the Calumet Bank and was present at the meetings of its stockholders and directors. As secretary, he signed the deed transferring the assets of the Calumet Bank to the Pullman Bank. He owned 200 of the 250 shares of the stock of the Kimbark State Bank when it was organized. He was a director and attorney for that bank until October 1, 1918, and presided as chairman at the meeting of its stockholders. Frank A. Novak became a director of the vault company on March 2, 1916, and continued as such until it was dissolved. He voted for the resolution to sell the real estate to Willis. He owned ten shares of the stock of the Kimbark State Bank when it was organized and acted as secretary at the first

meeting of its stockholders. He was a director and the cashier of the bank until October 1, 1918, and voted for the resolution to buy the real estate from Willis. Notice to a director of a corporation is notice to the corporation. (*Butterick Publishing Co.* v. *Whitcomb,* 225 Ill. 605; *Koch* v. *Roth,* 150 id. 212; *Easter* v. *Farmers' Nat. Bank,* 57 id. 215.) Frank H. Novak as director of each of these three corporations and as the holder of other offices in each of them, and Frank A. Novak as director in two of them and the holder of other offices in each of them, knew every detail of the transaction relative to the transfer of this property. Whatever notice they had was notice to each of the corporations of which they were officers and directors, including the Kimbark State Bank. On the day the real estate was transferred to that bank, Willis, who had full knowledge of every detail of the transaction, became the owner of 200 shares of the 250 shares of its stock. He practically became the owner of the bank. He did not become a director until almost two months later, but the fact of his relationship to the bank and the part he took in the transaction are circumstances to be considered in determining the liability of the bank on these trust deeds. When the Calumet Bank failed it owned 600 of the 650 shares of stock of the vault company, therefore twelve-thirteenths of the assets of the vault company were liable for the debts of the Calumet Bank. When the real estate of the vault company was transferred, the second and third trust deeds were upon record. By this record the Kimbark State Bank had notice of their existence but its officers took no steps to protect the bank against them. The subsequent action of the officers of the bank shows that they not only knew of the details of this transaction, but they recognized the liability of the bank on these two obligations. D. L. M. Simmons testified that after the deed to the bank was executed, Coleman, the cashier, in October, 1918, came to his office to see about the third trust deed and said that the

bank intended to pay it right away, and on October 30, 1918, he paid $100 on that obligation. Coleman testified that in October, 1918, he went to the office of Simmons and asked an indulgence from the foreclosure of the third trust deed and paid $100 on it. He testified that he told Frank H. Novak that if the bank was able to make any payment on the second and third trust deeds out of its income the amount of the payments would be charged to Willis; that the second and third trust deeds were to be taken care of through some arrangement between Novak and Willis; that there was $100,000 of stock of the bank for sale, and it was agreed that the proceeds of the sale of this stock was to be paid on the three mortgages, but the stock was not sold and no payments were made. He testified that an agreement was made between Novak and Willis as to the persons who were to reimburse the bank for payments on the second and third trust deeds. The evidence also shows that 36 shares of stock of a certain corporation were turned over to Coleman to be sold, to apply on the second mortgage. From this evidence it is apparent that the officers of the Kimbark State Bank not only knew of the arrangement between Frank H. Novak and Willis with reference to the transfer of the real estate and took it with full knowledge of such agreement, but they acquiesced in such arrangement after the transfers were made, and they are in no position to question the validity of the second and third trust deeds or the liability of the bank thereon.

We find no reversible error, and the judgment of the Appellate Court will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*