(No. 22992.

THE SHERWIN-WILLIAMS COMPANY, Defendant in Error, *vs.* WATSON INDUSTRIES, INC., Plaintiff in Error.

*Opinion filed October 24, 1935—Rehearing denied Dec. 4, 1935.*

SHERMAN M. BOOTH, CATRON & HOFFMANN, and MUM-FORD & MUMFORD, for plaintiff in error.

ENGLAND & O'TOOLE, WILSON & SCHMIEDESKAMP, and WILLIAMS & WILLIAMS, (A. F. RACKERBY, of counsel,) for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

A creditor's bill was filed in the circuit court of Pike county by the Sherwin-Williams Company, a corporation, on behalf of itself and all other creditors of R. A. Watson Orchards, Inc., against Watson Industries, Inc., R. A. Watson Orchards, Inc., and John F. Butcher. The bill was based upon a judgment previously recovered by the Sherwin-Williams Company in Cook county against R. A. Watson Orchards, Inc., in the sum of $6184.17, for an indebtedness incurred prior to November 1, 1930. A demurrer was filed to the original bill and sustained, whereupon plaintiff filed its amended bill, to which defendant, Watson Industries, Inc., filed answer. The Hunter Lumber Company, as a judgment creditor, by leave of court filed an intervening petition. Watson Industries, Inc., filed its answer to this petition, and upon the amended bill, the intervening petition and the answer to the bill and intervening petition, a trial was had before the court without a jury. After a hearing the trial court entered a decree finding that plaintiff had recovered judgment as alleged in the

amended bill; that executions had issued to the sheriffs of Cook and Pike counties and both had been returned unsatisfied; that the Hunter Lumber Company had recovered judgment as charged in its intervening petition; that execution issued pursuant thereto was returned unsatisfied; that Watson Orchards, Inc., did not have any property in the county of Cook or county of Pike out of which the execution could be satisfied, either in whole or in part; that the Hunter Lumber Company had furnished the merchandise which gave rise to its judgment, prior to November 1, 1930, at which time Watson Orchards, Inc., was the owner in fee simple of the premises described in the amended bill. The court further found that R. A. Watson was president of and owned a majority of the capital stock of Watson Orchards, Inc.; that he was one of the incorporators of Watson Industries, Inc., and a stockholder and director thereof; that John F. Butcher was likewise an incorporator, stockholder, director and officer of the latter company; that on or about November 4, 1930, Watson Orchards, Inc., entered into a contract with Butcher, for Watson Industries, Inc., as charged in the amended bill, for the conveyance of the premises therein described; that the stockholders of Watson Industries, Inc., were as charged in the amended bill; that Watson Industries, Inc., caused to be paid to Watson Orchards, Inc., the sum of $75,000 by crediting the latter with $48,000 owing by it to Butcher and to corporations in which he had an interest and by surrendering collateral held to secure these obligations; that as further consideration for this conveyance Watson Industries, Inc., paid Watson Orchards, Inc., $27,000 in cash, with the understanding that the former would assume a sprinkler contract in the amount of $43,984 and a mortgage of $2000, and would pay $1775 taxes for the year 1930 and an $800 balance due upon an apple-washing machine. The court further found that Watson Industries, Inc., issued and delivered to Butcher all of its preferred

stock, par value, of $75,000, and 2000 shares of common stock at a valuation of $37.50 a share; that the grantee in the deed of conveyance assumed the sprinkler contract and other indebtedness mentioned and accepted the prem-ises conveyed in full payment of its total issue of capital stock. The court further found that the contract dated November 4, 1930, created a secret trust for the benefit of Watson Orchards, Inc., by placing the 1000 shares of common stock in escrow; that the secret trust and escrow agreement were designed and entered into on the part of Watson and Watson Orchards, Inc., for the purpose of enabling the latter to retain a secret interest in the property conveyed, unknown to its creditors, and with the intent that upon the return of the consideration of $75,000 paid for the property within seven years it should have and retain a one-half interest in the property. The decree further found that Watson became manager of Watson Industries, Inc., for a term of years at a salary of $5000 a year; that at the time the contract and conveyance of the real estate were executed, Watson Orchards, Inc., was insolvent, a fact well known to Watson; that the conveyance and contract were entered into by Watson Orchards, Inc., with the fraudulent intent to hinder, delay and defraud its creditors, and had that effect and did perpetrate an actual fraud upon its creditors; that Watson Industries, Inc., and Butcher acting for it, did not have notice or knowledge of the intent of Watson Orchards, Inc., to hinder, delay or defraud its creditors, and in accepting said conveyance did not intend to hinder, delay or defraud creditors of Watson Orchards, Inc.; that these proceedings were brought on behalf of all persons, firms and corporations who were creditors of Watson Orchards, Inc., and who might intervene; that the contract of November 4 and deed of November 6, 1930, be set aside and declared null and void, but because Watson Industries, Inc., and Butcher had no actual notice or knowledge of the intent

of Watson Orchards, Inc., to hinder, delay and defraud its creditors, the former be protected to the extent of $75,000 paid by it to the latter. The court further found that the real estate should be sold by the master subject to certain liens and that the rights and equities of other parties should attach to the proceeds of sale.

The decree ordered the conveyance of November 6, 1930, set aside and all contracts, agreements, understandings and arrangements entered into on or about November 4, 1930, by and between the above named parties, under which the deed was executed, be set aside and declared a nullity; that the property described in the amended bill be sold by the master and from the proceeds be paid, first, the master's costs and commissions; second, the court costs of plaintiff and co-plaintiff; third, to Watson Industries, Inc., the sum of $75,000; fourth, plaintiff's reasonable solicitors' fees, to be subsequently fixed; fifth, the balance, if any, to be brought into and abide the further order of the court. From this decree plaintiff and co-plaintiff appealed to the Appellate Court for the Third District, which sustained the chancellor in all substantial respects except in his holding that Watson Industries, Inc., and Butcher acting for it, did not have notice or knowledge of the intent of Watson Orchards, Inc., to hinder, delay or defraud its creditors. On this point the Appellate Court charged notice of the fraudulent contract and transfer to Butcher and Watson Industries, Inc., and set aside the finding of the chancellor that Watson Industries, Inc., be protected to the extent of $75,000 paid by it to Watson Orchards, Inc. It was from this Appellate Court judgment of reversal and remandment that we granted *certiorari* for review.

After a review of the voluminous record we are satisfied that the judgment of the Appellate Court is correct and should be affirmed. The gist of its holding was, that Butcher, acting for Watson Industries, Inc., had knowledge of the fraudulent transaction and participated in its

perpetration to such an extent that no reimbursement to Watson Industries, Inc., should be made until the Sherwin-Williams Company and all other creditors who might intervene are satisfied in full. The circuit court had previously held the transaction fraudulent in every other respect. The evidence clearly shows that Watson Industries, Inc., did not agree to pay and assume an amount equivalent to the full value of the premises in question. The sprinkler system was not a part of the property conveyed but was owned by F. W. Cruickshank & Co. While the insurance rates upon the property would have been prohibitive without this sprinkler system, nevertheless the sum of $43,984 remained due before Watson Industries, Inc., could acquire title, and this amount was no part of the consideration of the property transferred. The record also shows that the $2000 mortgage was not assumed by Watson Industries, Inc., and that the contract entered into between those two companies did not contain an agreement by Watson Industries, Inc., to assume and pay the $1775 taxes for the year 1930 or to assume and pay the $800 balance upon an apple-washing machine. The record also discloses that the negotiations which resulted in the contract were pending as early as July, 1930, and were continued through September and October of that year; that Watson Orchards, Inc., was in acute financial distress for more than a year prior to the transfer of the property in question and that its bad financial condition was known to Butcher and his associates prior to November 6, 1930. A statement of the current assets and liabilities of Watson Orchards, Inc., as of November 1, 1930, before the contract was signed, showed overdrawn bank balances of $7070.75; total accounts payable of $103,564.39; notes payable, $420,602.49; salaries and wages due, $8315.21, and interest due of $3922.07, or total current liabilities of $543,-474.91. At that same time its current assets were only $385.50 cash, $109,611.66 inventories, $11,241.06 accounts

collectible and $7500 personal property, which, with a few other items, made total current assets of $128,994.88. Its deficit was therefore $414,480.03 shortly prior to the time the contract and conveyance were made. The record shows that Butcher was entirely familiar with this condition not only through correspondence which he had with Watson prior to November 6, 1930, but through personal contact and access to the records of Watson Orchards, Inc.

The property transferred included a valuable cold-storage warehouse and vinegar manufacturing plant and consisted of the only property which Watson Orchards, Inc., had not previously mortgaged to its creditors. It is true that, since Butcher died before this case was decided, much of the conversation between him and Watson is testified to only by Watson. Regardless of the latter's interest, if any, his testimony has not been impeached in any particular and is corroborated to a large extent by the correspondence and exhibits in the record. The evidence amply shows that there was a secret agreement between Watson Industries, Inc., and Watson Orchards, Inc., by which a one-half interest in the property was to be returned to Watson Orchards, Inc., at the end of seven years in the event the earnings derived from the operation of the property during that time should equal or exceed $75,000. There is no evidence in the record that the creditors of Watson Orchards, Inc., were informed in any way of this secret agreement. Both the chancellor and the Appellate Court found from the evidence that Watson Orchards, Inc., was insolvent, and that the conveyance in question was made by Watson Orchards, Inc., with fraudulent intent to hinder, delay or defraud its creditors. These findings are clearly in accord with the evidence, as is also the finding that the purported $5500 note dated January 12, 1931, and secured by a trust deed on certain orchard land, was never accepted by the Sherwin-Williams Company to replace a prior note on which judgment was confessed. Under the

terms of the agreement between the two companies Watson was to hold one share of common stock of the new company, Watson Industries, Inc., and was elected its president and manager at a salary of $5000 per annum. The fact that he only served in that position for one year is not material. The balance sheet shows that on November 1, 1930, he owed Watson Orchards, Inc., the sum of $90,000 and that this amount was listed as uncollectible. The fact that he was displaced by another manager at the end of his first year with the new company, and, as alleged, has testified to its detriment, is also not material. The insolvency of Watson Orchards, Inc., was generally known and self-evident at the time the contract was made with Watson Industries, Inc. Since Watson knew of his fraudulent intent as director and president of Watson Orchards, Inc., he knew it also as director and president of Watson Industries, Inc. (*Simmons* v. *Roseland Security Vault Co.* 331 Ill. 563.) The fact that the contract evidencing the secret trust was assigned and the assignment later recorded, or that a record of the transaction was made in the minutes of the directors of Watson Orchards, Inc., and in the written contract between the parties, does not change the fact that the agreement was secret and that there was no notice, constructive or otherwise, to other creditors. (*Schmidt* v. *Shaver,* 196 Ill. 108.) Where a grantor or assignor sells for the purpose of defeating the claims of his creditors, and the grantee or assignee knowingly assists in effectuating such fraudulent intent, or even has notice thereof, he will be regarded as a participator in the fraud, for the law never allows one man to assist in cheating another. (Bump on Fraudulent Conveyances, (2d ed.) 197, *et seq.*) A deed fraudulent in fact is absolutely void as against creditors and is not permitted to stand for any purpose of reimbursement or indemnity. *Beidler* v. *Crane,* 135 Ill. 92.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*