CUDAHY, Circuit Judge.
 

 This is an appeal by a secured creditor, the Bank of Illinois in Champaign (the “Bank”), from an order of the district court denying the Bank’s complaint for reclamation of certain collateral in which it claims a security interest. The bankruptcy judge, affirmed by the district court, found that the security interest of the Bank never attached to the collateral (nor was the security interest enforceable) because the debtors,
 
 *435
 
 Ronald L. Hein and Robert D. Richardson, did not have “rights in the collateral” when they granted the security interest in the collateral to the Bank. Instead, before the security interest was granted, Hein and Richardson had transferred their interest in the collateral to the bankrupt, Pubs, Inc. of Champaign (“Pubs”). We find that Pubs was estopped to deny the attachment of the security interest and that this estoppel gave Hein and Richardson “rights in the collateral” to which the Bank’s security interest attached so that the Bank obtained an enforceable security interest. Since the Bank perfected its security interest prior to bankruptcy, we hold that the security interest was valid against the claim of the trustee, and we, therefore, reverse.
 

 I.
 

 Sometime before November 5, 1976, Hein and Richardson, who were then, or who were to become, directors, officers, and the sole shareholders of the bankrupt corporation, Pubs, agreed to purchase certain restaurant equipment to be used in a restaurant then under construction in Champaign, Illinois. Shortly before the equipment was due to arrive in Champaign, Hein and Richardson explored the possibility of obtaining a loan to be used for the purchase of the equipment. It was the intention of both Hein and Richardson to borrow the money personally from the Bank, grant a security interest
 
 [1]
 
 in the equipment to the Bank and then transfer the equipment to Pubs in exchange for certain common stock of Pubs.
 

 On November 5, 1976, Hein executed a collateral promissory note (due in six months) in favor of the Bank, which,
 
 inter alia,
 
 granted to the Bank a security interest in certain scheduled equipment, fixtures, furnishings and supplies (the “collateral”) in consideration of $60,000 to be advanced by the Bank. Richardson was absent on November 5, 1976 and did not sign the collateral promissory note until November 16. The Bank deleted the date of November 5, 1976, which originally appeared on the collateral promissory note and substituted, as the date of execution, the date of November 16, 1976, and the $60,000 was advanced on that date.
 
 [2]
 
 On November 9, 1976, meanwhile, Hein and Richardson had executed a bill of sale and conveyance of the collateral to Pubs. The bill of sale and conveyance
 
 expressly stated that the collateral was transferred subject to the security interest in favor of the Bank.
 

 The transfer to Pubs was made in consideration of certain of its shares of stock. Obviously, it had been the intention of Hein, Richardson, the Bank and Pubs that the security interest in the collateral be created
 
 prior
 
 to the transfer of the collateral to Pubs and that Pubs take the collateral subject to the security interest. In the event, Richardson did not sign the collateral promissory note which purported to create the security interest until
 
 after
 
 transfer of the collateral to Pubs.
 

 Financing statements with respect to the collateral were properly filed by the Bank with the Recorder of Deeds of Champaign County, Illinois, on November 19, 1976, and with the Illinois Secretary of State on November 22, 1976. On May 16, 1977, the note, when due, was renewed by the Bank for an additional three months. Pubs filed a voluntary petition in bankruptcy on April 5, 1978, at which time the bankrupt was in possession of the collateral, and Hein and Richardson were in default under the terms of the collateral promissory note.
 

 Pursuant to order of the bankruptcy judge, the collateral was later sold, and the question now presented is the respective rights to the proceeds of the sale, of the Bank and of the trustee.
 

 II.
 

 The trustee, who prevailed below, contends that, since Richardson did not sign
 
 *436
 
 the collateral promissory note until November 16, 1976 (and the Bank changed the note to reflect a November 16 date of execution), a security interest could not have attached or become enforceable since, on November 16, Hein and Richardson no longer had “rights in the collateral.” With respect to attachment and enforceability, the controlling provision of the Illinois Commercial Code reads in pertinent part as follows:
 

 “(1) Subject to the provisions of Section 4-208 on the security interest of a collecting bank and Section 9-113 on a security interest arising under the Article on Sales,
 
 a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless
 

 (a) [the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement describing the collateral]; and
 

 (b) value has been given; and
 

 (c)
 
 the debtor has rights in the collateral.
 

 “(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.” Ill.Rev.Stat. ch. 26, § 9-203(1) and (2)
 
 [3]
 
 [emphasis supplied].
 

 The requirement that the debtor have rights in the collateral is,
 
 inter alia,
 
 intended to postpone attachment until the property proposed to be subject to the security interest comes into existence or until the debtor acquires rights in it (as with “after-acquired” property,
 
 cf.
 
 Ill.Rev.Stat. ch. 26, § 9-204). It should be noted also that § 9-203(2) expressly equates the concept of attachment with that of enforceability against the debtor. Ill.Ann.Stat. ch. 26, Comment, p. 109 (Smith-Hurd).
 

 The term “rights in the collateral” is not defined in the Uniform Commercial Code (nor in its Illinois version), but, as will appear, the debtor may clearly have sufficient “rights” for purposes of § 9-203 if the true owner of the collateral has
 
 agreed
 
 to the debtor’s use of the collateral as security or if the true owner has become
 
 estopped
 
 to deny the creation or existence of the security interest.
 
 [4]
 
 Thus, the requirement that there be “rights in the collateral” illustrates the general principle that “one cannot encumber another man’s property in the absence of consent, estoppel or some other special rule.”
 
 First National Bank and Trust Co. of Augusta v. McElmurray,
 
 120 Ga.App. 134, 138, 169 S.E.2d 720, 724 (1969). The consent of the true owner of the collateral is enough to give the debtor rights in the collateral for purposes of § 9-203.
 
 See General Motors Acceptance Corp.
 
 v.
 
 Washington Trust Co. of Westerly,
 
 386 A.2d 1096 (R.I.1978) and
 
 K. N. C. Wholesale, Inc. v. AWMCO, Inc.,
 
 56 Cal.App.3d 315, 128 Cal. Rptr. 345 (1976). And, in
 
 Avco Delta Corporation Canada Ltd.
 
 v.
 
 United States,
 
 459 F.2d 436 (7th Cir.1972), this Court, through Judge Sprecher, held that a security interest, also allegedly unenforceable for lack of attachment in that the corporate debtor had no rights in the collateral, could be created by estoppel through acts or omissions (including silence) of the true corporate owner.
 

 Avco Delta
 
 involved the competing claims of a secured creditor and the United States as the holder of a tax lien. The case concerned three closely affiliated corporations (“Ltd.”, “Construction” and “Taxpayer”— collectively the “Canadian Parkhill compa
 
 *437
 
 nies”), one of which, Construction, was the debtor and the purported owner of 29 pieces of heavy construction equipment which it used as collateral to secure a loan from Avco Delta (“Avco”). Construction expressly covenanted to Avco that it owned the mortgaged equipment and provided it with documents to that effect, but, in fact, Taxpayer was the true owner. The alleged intent of the parties had originally been that Construction would own the equipment and lease it to Taxpayer for use on a construction job, but this was not the procedure in fact followed. 459 F.2d 438, 439. Ltd. and Taxpayer had agreed,
 
 inter alia,
 
 to guarantee payment of debts running from Construction to Avco.
 

 The secured creditor, Avco, had perfected its security interest in the collateral by filing with respect to Construction on November 25, 1969. On the other hand, the United States perfected a tax lien against Taxpayer on the same 29 items of collateral (arising from Taxpayer’s delinquent withholding and F.I.C.A. taxes) by filing against Taxpayer on February 16, 1970.
 

 The crucial question in
 
 Avco Delta
 
 was whether the debtor (Construction) had “rights in the collateral” under Ill.Rev.Stat. ch. 26, § 9-204 (1963 version) so that Avco’s security interest would attach and become enforceable even though Construction did not own the collateral.
 
 [5]
 
 Judge Sprecher noted that the “code does not define the word ‘rights’ except to indicate that it ‘includes remedies’.” Ill.Rev.Stat. ch. 26, § 1-201(36),
 
 Avco Delta
 
 at 440. Judge Sprecher then observed that,
 

 “Section 1-103 [of the Code] provides in part, ‘Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to .
 
 estoppel,
 
 fraud, misrepresentation, . or other validating or invalidating cause shall supplement its provisions.’ [footnote omitted] Ill.Rev.Stat. ch. 26, § 1-103 (1963).
 

 “It is clear under Illinois law that some ‘title or rights’ can be created by
 
 estoppel.
 
 An Illinois court expressed the concept in
 
 Mori v. Chicago Nat'l Bank,
 
 3 Ill.App.2d 49, 51, 120 N.E .2d 567, 568 (1954):
 

 ‘Whatever title the defendant has must rest on the doctrine of
 
 estoppel.
 
 This is an equitable doctrine taken over by the law. It is based upon the conduct of the true owner, whereby he has allowed another to appear as the owner, or as having full power of disposition over the property, so that an innocent person is led into dealing with such apparent owner.’ ”
 

 459 F.2d 440—141
 
 [6]
 
 [emphasis supplied].
 

 Avco Delta
 
 further held that under Illinois law,
 

 “Construction had some ‘rights in the collateral’ arising through the acquiescence in and guarantee of its arrangement with Avco by [T]axpayer and Ltd., which created an estoppel. Whether the estoppel was express or implied makes no difference.” 459 F.2d 441 [footnotes omitted].
 
 [7]
 

 With respect to the tax lien filed by the United States,
 
 Avco Delta
 
 also held that the lien of the government did not exceed the rights of Taxpayer. Thus the rights of the government rose no higher than those of Taxpayer whose property it sought to encumber. Further, although some states apparently hold that creditors of the estopped party are not likewise estopped as a matter of state law, Illinois holds that such credi-
 
 *438
 
 tore are so estopped.
 
 [8]
 
 Therefore, Construction’s title to, or rights in, the collateral created by Taxpayer’s estoppel would, in Illinois, apply as against creditors such as the government. 459 F.2d 441-442.
 

 Avco Delta,
 
 went on to hold that,
 

 “Because the estoppel created an interest or rights in Construction, binding on [T]axpayer and its creditors, that interest or rights were sufficient under Section 9-204 of the code to permit Avco’s security interest to attach to the collateral. Avco’s subsequent filing of the financing statement . . . was then sufficient under Section 9-302 to perfect Avco’s security interest in the collateral without any additional filing as to Ltd. or [Taxpayer.” 459 F.2d 442.
 

 The principles announced in
 
 Avco Delta
 
 underlie the result in the instant case. Here, the trustee argues that since Richardson did not sign the security agreement (the collateral promissory note) until
 
 after
 
 the collateral had been transferred to the bankrupt, Pubs, Richardson had no “rights in the collateral.” Without such “rights” the security interest of the Bank could not attach to the collateral under § 9-203 and therefore could not be enforced against the debt- or or third parties. We find, however, that under Illinois law, as construed in
 
 Avco Delta,
 
 Pubs was estopped to deny the Bank’s security interest and this estoppel gave Hein and Richardson “rights in the collateral” within the meaning of § 9-203 so the Bank’s security interest attached to the collateral and was enforceable against Hein, Richardson, Pubs, and other parties, including the trustee.
 

 Under Illinois law one may be es-topped from asserting his rights - if his words or conduct has led another party to take some action which he would not otherwise have taken but for the words or conduct of the estopped party. The party asserting the estoppel in such a case must have actually relied on the words or conduct and may not have had knowledge of (or convenient access to) facts contrary to those on which he relied. A party may also be estopped from asserting his rights where he has merely been silent but
 

 “where silence is the ground of the estop-pel it is essential that the party estopped should have knowledge of the facts
 
 and the other party be ignorant of the truth
 
 and be misled into doing that which he would not have done except for that silence.”
 
 Perlman v. First National Bank of Chicago,
 
 15 Ill.App.3d 784, 795, 305 N.E.2d 236, 245 (1973),
 
 appeal dismissed,
 
 60 Ill.2d 529, 331 N.E.2d 65 (1975) [emphasis in original],
 

 If the president, vice-president or director of a corporation has knowledge or notice of a fact, knowledge or notice of that fact is generally imputed to the corporation.
 
 Easter v. Farmers’ National Bank of Salem,
 
 57 Ill. 215, 220 (1870);
 
 Hunt v. Rosenbaum Grain Corp.,
 
 355 Ill. 504, 513, 189 N.E. 907, 911 (1934);
 
 Sherwin-Williams Co. v. Watson Industries,
 
 361 Ill. 598, 605, 198 N.E. 704, 707 (1935). Notice to the director of a corporation is notice to the corporation and estops the corporation and its receiver from questioning the validity of a prior transaction.
 
 Simmons v. Roseland Security Vault Co.,
 
 331 Ill. 563, 574, 163 N.E. 333, 336-337 (1928). Parties to an agreement are also estopped to deny the recitals contained in the agreement.
 
 Wynkoop v. Cowing,
 
 21 Ill. 570, 583-584 (1859);
 
 Ettelsohn v. Kirkwood,
 
 33 Ill.App. 103, 104 (1889).
 

 As indicated, Pubs is estopped to deny the validity of the Bank’s security interest. Pubs’ title to the property was clearly evidenced by the November 9, 1976, bill of sale which recited that Pubs took the collateral subject to the Bank’s security interest. Having been put on notice by the recital of the bill of sale, Pubs is estopped to deny the recited security interest by claiming an interest superior to it.
 

 Moreover, Pubs is chargeable with the knowledge of its officers and directors, Hein and Richardson, that on November 16, 1976, persons who were not the true owners
 
 *439
 
 of the collateral granted a security interest in it to the Bank. “[W]here the true owner of the property allows another to appear as the owner of or to have full power to dispose of the property, so a third party is led into dealing with the apparent owner,” the true owner will be estopped from asserting that the apparent owner did not have the title.
 
 National Bond Investment Co. v. Shirra,
 
 255 Ill.App. 415, 419 (1930).
 

 The Bank did not know of the premature transfer to Pubs and did not have any way of determining that Hein and Richardson had transferred the property since such a transfer would not have been a matter of public record. The Bank relied to its detriment on Pubs’ silence when it advanced the $60,000 and when it renewed the loan. Since all elements of an estoppel are present, Pubs is estopped to deny the validity of the Bank’s security interest, and this estoppel gives Hein and Richardson sufficient “rights in the collateral” under § 9-203 so that the security interest attaches and is enforceable. The security interest has been perfected by the Bank’s subsequent filing of appropriate financing statements.
 

 III.
 

 The trustee further argues that even if the bankrupt (Pubs) is estopped from challenging the Bank’s security interest, the trustee would not be similarly estopped because he may assert the rights of a hypothetical lien creditor under Section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c). More specifically, Section 70(c) provides the trustee with all the “rights, remedies, and powers of a creditor” who obtained a judgment against the bankrupt, an execution returned unsatisfied against the bankrupt, or a lien on property “at the date of bankruptcy, whether or not such a creditor actually exists.” The question thus becomes one of whether a creditor of Pubs could have obtained a lien on the collateral on April 5,1978 (the date of bankruptcy) which would have prevailed over the Bank’s security interest in the property (perfected in November, 1976). We hold that such a lien would not have priority over the Bank’s perfected security, interest.
 

 This result is compelled by several complementary analyses of the rights of the parties. Under the Illinois Commercial Code, § 9-203 governs the attachment and enforceability of a security interest as between the parties to the transaction — the debtor and the secured party. Generally, if the security interest is enforceable against the debtor, who is usually also the true owner of the collateral (and against the true owner when the debtor's rights arise by consent or estoppel), a “third party” claiming under the true owner or the debt- or, may not avoid the security interest on grounds of non-attachment. Instead, the rights, as against the secured party, of third parties (including subsequent purchasers from, or holders of liens against, the debtor or true owner) are generally determined by applying the rules of perfection and related rules prescribed by Article IX of the Code.
 
 See United States v. Gleaners Farmers Cooperative Elevator Co.,
 
 481 F.2d 104, 106 n.4 (7th Cir. 1973).
 

 Applying these rules of perfection to the facts of this case, it is clear that the Bank’s security interest in the collateral was perfected under Ill.Rev.Stat. ch. 26, § 9-302 in November, 1976, when the Bank filed the financing statements required by Ill.Rev.Stat. ch. 26, § 9-401. On the other hand, the bankruptcy trustee, as a hypothetical lien creditor, obtained his lien only as of the date of bankruptcy, April 5, 1978, more than 18 months after the Bank had perfected its security interest. Thus, under Ill.Rev.Stat. ch. 26, § 9-312(5), the Bank’s security interest in the collateral was perfected first, and the Bank would have priority over the trustee as of the date of bankruptcy.
 

 This conclusion is buttressed by an analysis of Illinois pre-Code case law. As noted in
 
 Avco Delta,
 
 creditors of an es-topped party are themselves estopped.
 
 See Cross v. Weare Commission Co.,
 
 153 Ill. 499, 38 N.E. 1038 (1894);
 
 Thomas v. Citizens’ Horse Ry. Co.,
 
 104 Ill. 462 (1882);
 
 Reynolds
 
 
 *440
 
 v.
 
 Patterson,
 
 4 Ill.App. 183 (1879);
 
 Avco Delta, supra,
 
 459 F.2d at 441-442. The trustee argues that
 
 Avco Delta
 
 may be distinguished from the instant ease because that case involved a federal tax lien while here we are concerned with the powers of the trustee in bankruptcy. The rights of the United States in
 
 Avco Delta
 
 were purportedly perfected under 26 U.S.C. § 6323(a)
 
 [9]
 
 by filing against Taxpayer,
 
 subsequent
 
 to the perfection of Avco’s lien, which was also perfected by filing. Thus, the rights of the United States in
 
 Avco Delta
 
 were those of a subsequent
 
 actual
 
 lien creditor, while the rights of the trustee in bankruptcy in the instant case are those of a subsequent
 
 hypothetical
 
 lien creditor. In the nature of things, the rights of a hypothetical lien creditor rise no higher than those of an actual lien creditor. In
 
 Avco Delta,
 
 the United States lost to Avco because Avco was the first to perfect its security interest. In the instant case, following the principles of the Code, the Bank, which was also the first to perfect, must also prevail.
 

 IV.
 

 Even without particular reference to pre-Code Illinois case law with respect to estop-pel, the result reached here follows from general Code principles. The validity and enforceability of the security agreement, as among the Bank, Hein, Richardson and Pubs, have been established through,
 
 inter alia,
 
 estoppel as to the issue of Richardson’s late execution of the agreement. Once the security interest has been validly created and is enforceable against the immediate parties, the scheme of the Code is that rights against subsequent creditors are primarily dependent upon the effectiveness of
 
 perfection
 
 under the requirements of §§ 9-302, 9-304, 9-305, 9-306 and other sections.
 

 In the instant case, the Bank filed a timely financing statement under Ill.Rev. Stat. ch. 26, § 9-302, showing a security interest in favor of the Bank and listing Hein and Richardson as debtors or grantors of the security interest. This is precisely the same form of financing statement as would have been filed had the premature-transfer of the collateral to Pubs not taken place. Such a filing perfected the security interest of the Bank in the collateral, and the filing remained effective with respect to creditors of Pubs and its trustee in bankruptcy. Ill.Rev.Stat. ch. 26, § 9-402(7). This is true even though a search of the records under “Pubs” would not have disclosed the security interest (since the interest would have been filed under “Hein” and “Richardson”). “[A]ny person searching the condition of the ownership of a debtor must make inquiry as to the debtor’s source of title and must search in the name of a former owner if circumstances seem to require it.” Comment 8 to Ill.Ann.Stat. ch. 26, § 9-402(7), p. 288 (Smith-Hurd). Therefore, the discrepancy as to time of transfer of the collateral from Hein and Richardson to Pubs would not, under these facts, affect the means or form of filing for perfection or the effect of perfection upon the rights of Pubs or its trustee in bankruptcy.
 

 On this point, the trustee, seeking to distinguish
 
 Avco Delta,
 
 points out that Judge Sprecher in that case relied in part on the similarity in names of Ltd., Construction and Taxpayer, all of which shared the highly distinctive name of “Canadian Parkhill.” Therefore, where the financing statement was filed under the name of
 
 Construction,
 
 it would have suggested a security interest in identical collateral apparently owned by
 
 Taxpayer.
 

 Although in
 
 Avco Delta
 
 the similarity in names of the two possible owners might have been, as a practical matter, more helpful to a searching creditor than the lack of similarity in the instant case, that distinction (which corresponds to different facts there) ought not to be control
 
 *441
 
 ling, or even strictly relevant, to the result here. Here notice to subsequent creditors was precisely the same as it would have been absent the premature transfer of title to the collateral. Further, as indicated, a creditor concerned with the debtor’s ownership must inquire as to the debtor’s source of title. Hence, on the present facts, creditors were in no way prejudiced by the premature transfer, and
 
 their
 
 rights should not be affected by it.
 

 V.
 

 In addition, we note briefly the relation of § 70(a) of the Bankruptcy Act, 11 U.S.C. § 110(a), to the instant problem. Apart from his standing as a lien creditor of the bankrupt and without regard to certain exceptions not here relevant, the trustee is vested by operation of law with the title to the property of the bankrupt as of the date of filing of the petition in bankruptcy. Bankruptcy Act, § 70(a), 11 U.S.C. § 110(a).
 
 [10]
 
 Under this provision the trustee, as successor in interest to the bankrupt, takes title to the property of the bankrupt subject to all liens, claims and encumbrances — legal and equitable — which could be assessed by or against the bankrupt.
 
 In re Toms,
 
 101 F.2d 617, 619 (6th Cir. 1939). In the instant case, since Pubs is estopped to deny the security interest of the Bank in the collateral, the trustee holds such collateral subject to the same estoppel, and the collateral in the hands of the trustee is subject to the security interest of the Bank.
 
 In re Rambler Cafeteria,
 
 9 F.2d 861 (2d Cir. 1925),
 
 cert. denied,
 
 270 U.S. 660, 46 S.Ct. 355, 70 L.Ed. 785 (1926). The trustee does not take title to the collateral as a bona fide purchaser (thus arguably free of a security interest created by estoppel).
 
 In re Richards,
 
 455 F.2d 281 (6th Cir. 1972).
 
 [11]
 
 Hence, neither under the Bankruptcy Act, § 70(a), 11 U.S.C. § 110(a) nor under § 70(c), 11 U.S.C. § 110(c), can the trustee take or hold the collateral free of the security interest of the Bank.
 

 VI.
 

 The Bank also argues here that, even if its security interest in the collateral as a whole must fail, its security interest in Hein’s half interest is not affected. The alleged reason for this is that Hein executed the security agreement
 
 before
 
 the transfer of the collateral to Pubs took place. Since we find that the Bank’s security interest in the collateral as a whole must prevail over the interest of the trustee, we do not reach any separate question as to Hein’s half interest.
 

 The judgment is reversed with instructions to enter judgment for plaintiff.
 

 [1]
 

 . It cannot be determined from the record whether this interest was intended to be a “purchase money security interest” within the meaning of the Uniform Commercial Code.
 

 [2]
 

 . The only issue raised on appeal and in the proceedings below was whether the debtors had rights in the collateral. We express no opinion as to when “value” was given for the security interest.
 

 [3]
 

 . Illinois has adopted the 1972 amendments to Article IX of the Uniform Commercial Code.
 

 [4]
 

 . One section of the Code makes specific provisions for the rights of the owner when the debtor has given a security interest in the true owner’s collateral. Ill.Rev.Stat. ch. 26, § 9-112 provides that when the secured party
 
 knows
 
 that the collateral does not belong to the debt- or, the true owner is entitled to any surplus if the collateral is sold to satisfy the debt and has other rights similar to those of the debtor. However, the Code does not give the true owner the right to challenge the security interest merely because the debtor does not own the collateral
 
 if
 
 there is evidence of consent or estoppel.
 

 [5]
 

 . Through amendment of the Uniform Commercial Code in 1972, as adopted in Illinois, the requirement of “rights in the collateral,” addressed in
 
 Avco Delta,
 
 is now incorporated in § 9-203, quoted
 
 supra.
 

 [6]
 

 .
 
 See Anderson v. Armstead,
 
 69 Ill. 452, 454-455 (1873);
 
 see also Drain v. LaGrange State Bank,
 
 303 Ill. 330, 335, 135 N.E. 780, 782 (1922);
 
 Whalen v. Schneider,
 
 281 Ill. 557, 565-566, 118 N.E. 41, 44 (1917);
 
 National Bond & Investment Co.
 
 v.
 
 Shirra,
 
 255 Ill.App. 415, 419 (1930).
 

 [7]
 

 . Illinois law allows estoppel to arise from silence in some circumstances.
 
 See Illinois Law and Practice, Estoppel,
 
 § 32.
 
 See also Jurek v. Smuczynski,
 
 61 Ill.App.2d 426, 209 N.E.2d 850, 853 (1965).
 

 [8]
 

 .
 
 Cross v. Weare Commission Co.,
 
 153 Ill. 499, 38 N.E. 1038 (1894);
 
 Thomas v. Citizens’ Horse Ry. Co., 104
 
 Ill. 462 (1882);
 
 Reynolds v. Patterson,
 
 4 Ill.App. 183 (1879).
 

 [9]
 

 . 26 U.S.C. § 6323(a) provides in pertinent part:
 

 “Purchases [sic], holders of security interests, mechanic’s lienors, and judgment lien creditors. — The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic’s lien- or, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.”
 

 [10]
 

 . The Bankruptcy Act, § 70(a), 11 U.S.C. § 110(a) provides in pertinent part as follows:
 

 “(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt
 

 [11]
 

 . “A Trustee in Bankruptcy acquires title to the assets of a bankrupt by operation of law. He is not an innocent purchaser for value, but takes title to the bankrupt’s property subject to all liens, claims and equities thereon. He has the lien of an execution creditor, which is about the lowest form of security.” 455 F.2d 281, 284.